JANA, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–203C.

United States Court of Federal Claims.

Nov. 15, 1995.

Donald O. Ferguson, San Antonio, Texas, for plaintiff.

Harold D. Lester, Jr., Washington, DC, with whom was Frank W. Hunger, Assistant Attorney General, for defendant.

## ORDER

WEINSTEIN, Judge.

Plaintiff has moved to dismiss defendant's counterclaims and special plea in fraud, as barred by the statute of limitations. The motion is granted in part and denied in part.

### Background

Plaintiff JANA, Inc., entered into two contracts with the Navy for the development of aeronautical/technical manuals, changes/revisions, and documentation support services, No. N001–40–80–D–2454 ("contract 2454") and No. N001–40–85–D–E–260 ("contract E–260"), in 1980 and 1984, respectively. The Navy paid JANA more than eighteen million dollars under contract 2454, and more than nineteen million dollars under contract E–260.

Contract 2454 required JANA to provide an indefinite amount of supplies and services (technical manual writing; research editing; illustrating; and preparation of composite negatives, microfilm, magnetic tape, and punched paper tape), to be ordered by periodic delivery orders and paid for, at an hourly or daily rate, upon JANA's presentation of progress payment vouchers, substantiated by individual daily time cards. JANA assigned labor charge code 850479 to delivery order ZZM3 under contract 2454, and code 850179 to a firm fixed price contract it was performing for the Army. The government alleges that JANA personnel, including its president, altered numerous time cards of workers employed on the Army contract by changing the code on the cards from 850179 to 850479 (changing the "one" to a "four"), causing hours actually spent on the fixed price Army contract to be charged to Navy contract 2454, delivery order ZZM3. Twenty-six false vouchers based on these cards were submitted to the Navy between July 1984 and September 1986. The Navy paid in full the $1,188,186.10 in vouchers submitted for delivery order ZZM3.

JANA assigned code 850478 to a different delivery order (number ZZN5) under Navy contract 2454, and code 850178 to another firm fixed price contract it was performing for the Army. According to the government, JANA personnel changed the code written on numerous time cards from 850178 to 850478 (again changing the "one" to a "four"), thus causing hours actually spent on the fixed price Army contract to be charged to delivery order ZZN5, and submitted thirty-two false progress payment vouchers for such time to the Navy between August 1984 and March 1987. The Navy paid $1,137,-118.47 for delivery order ZZN5; JANA had submitted vouchers for $1,169,119.98.

JANA personnel allegedly also, at an unspecified time, altered time cards for work under other contracts, to be used to support vouchers submitted for payment for other delivery orders under contract 2454.

Contract E–260 was a cost plus fixed fee contract requiring JANA to provide the Navy an indefinite amount of services, to be ordered by periodic delivery orders and paid for upon JANA's presentation of progress payment vouchers, each supported by a statement of costs. JANA allegedly also, at an unspecified time, altered time cards as described above, to charge costs incurred on other contracts to contract E–260. In addition, JANA allegedly evaded contract E–260's ceiling for overhead costs by billing for progress payments for these costs between September 1985 and June 1986 based upon time cards misidentifying these overhead costs as direct labor for specific delivery orders.

Defendant alleges that it did not discover the fraud, despite due diligence, until April 26, 1990, at the earliest.

On July 1, 1993, JANA submitted final invoices on Standard Form 1034, Public Voucher for Purchases and Services Other than Personnel, totalling $53,217.77 for contract 2454 and $529,696.75 for contract E–260.[1] On January 3, 1994, JANA submitted certified claims seeking the same amounts plaintiff alleges were sought in the Public Vouchers ($53,217.77 under contract 2454

---

1. Defendant denies that final invoices on Public Vouchers were submitted for contract 2434, and alleges that the Public Vouchers for contract E– 260 were submitted in September 1993, and do not total $529,696.75.

and $529,696.75 under contract E–260). After the claims were deemed denied, JANA filed suit in this court on March 29, 1994. Defendant filed an answer asserting thirteen counterclaims on May 17, 1995.

The first seven counterclaims arise from the alleged alteration of time cards reflecting work on other contracts to falsely indicate the work was performed for the Navy's contract 2454. The first counterclaim seeks civil penalties and double or treble damages under the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), for more than fifty-eight false claims requesting payment "during the course of contract performance." Comp. ¶ 32.[2] The second counterclaim seeks civil penalties and damages under a different provision of the FCA, 31 U.S.C. § 3729(a)(2).[3] (The difference between § 3729(a)(1) and § 3729(a)(2) is that the former imposes liability for presenting a false claim, while the latter imposes liability for using a false record or statement to get a false claim paid.) The third counterclaim seeks recovery of money paid to JANA under mistake of fact. The fourth counterclaim, for common law fraud, seeks recovery of money paid to JANA based on material misrepresentations of fact. The fifth counterclaim seeks return of any unjust enrichment. The sixth counterclaim seeks a civil penalty under 31 U.S.C. § 3729(a)(1) for JANA's certified claim under contract 2454. The seventh counterclaim seeks damages for that certified claim under the Contract Disputes Act fraud provision, 41 U.S.C. § 604.

The remaining counterclaims arise from the claims based upon altered time cards and disguised overhead costs falsely attributed to contract E–260. The eighth and ninth counterclaims seek civil penalties and damages under 31 U.S.C. § 3729(a)(1) and § 3729(a)(2), respectively. The tenth counterclaim seeks recovery of money paid to JANA under mistake of fact. The eleventh counterclaim, for common law fraud, seeks recovery of money paid to JANA based on material misrepresentations of fact. The twelfth counterclaim seeks return of any unjust enrichment. The thirteenth counterclaim seeks a civil penalty under 31 U.S.C. § 3729(a)(1) for JANA's certified claim under contract E–260.

Defendant also asserts a special plea in fraud under 28 U.S.C. § 2514 relating to both contracts, and seeks offsets against any recovery by JANA.

Plaintiff has moved to dismiss the counterclaims and the special plea in fraud, as time-barred.

*Discussion*

■ The court has jurisdiction over the counterclaims. 28 U.S.C. § 1503; *Martin J. Simko Constr., Inc. v. United States,* 852 F.2d 540, 547 (Fed.Cir.1988). In reviewing a motion to dismiss a counterclaim, as when reviewing a motion to dismiss a complaint, RCFC 12(b), the allegations must be construed favorably to the pleader, and the motion must be denied if those facts reveal any possible basis upon which the pleader may prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *W.R. Cooper Gen. Contractor v. United States,* 843 F.2d 1362, 1364 (Fed.Cir. 1988).

■ The burden of establishing that the statute of limitations bars a government counterclaim is on the plaintiff.

*False Claims Act counterclaims*

The first, second, sixth, eighth, ninth, and thirteenth counterclaims are brought under the False Claims Act. As currently in effect, the FCA statute of limitations bars claims brought

(1) more than 6 years after the date on which the violation of § 3729 is committed, or

---

2. 31 U.S.C. § 3729(a)(1) establishes civil liability for any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces ... a false or fraudulent claim for payment or approval."

3. 31 U.S.C. § 3729(a)(2) establishes civil liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility ·to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b) (as amended by the False Claims Amendments Act of 1986, Pub.L. 99–562, § 5, 100 Stat. 3153, 3158).[4] Thus, there is a minimum limitations period of six years, and this period is not increased, as a practical matter, unless the violation is not discovered until more than three years after the violation, in which case the statute may be extended for three years from the date of discovery, up to a maximum of ten years after the violation.

Defendant argues that it is not limited by the three years from discovery limitation period, but rather is entitled, under equitable tolling principles, to the six-year limitations period in § 3731(b)(1), which, it alleges, did not even commence to run until the government discovered the fraud, on April 26, 1990 (three to six years after the violations), and that the counterclaims are timely because they were filed less than six years after that (in May 1995). Defendant asserts that this was the rule before the 1986 amendment to § 3731(b), when it provided only the six years from violation statutory period, "A civil

action under section 3730 of this title must be brought within 6 years from the date the violation is committed," 31 U.S.C. § 3731(b) (1982), and that the amendment should therefore be interpreted to incorporate that rule.

Even if defendant's interpretation of the rule under former § 3731(b) is correct, the plain language of § 3731(b), as amended, is inconsistent with defendant's contention that equitable tolling still applies. Section 3731(b) now provides a statutory means of extending the statute to account for the government's lack of knowledge of the fraud, *i.e.*, of permitting "equitable tolling." As before, the event triggering the six-year statute of limitations, under § 3731(b)(1), is the false claim.[5] In addition, a three-year limitations period is provided in 3731(b)(2), which is triggered by the government's discovery of the fraud. However, the statute may not be extended beyond ten years from the violation, even if the fraud is not discovered until more than seven years afterwards.

■ If, as defendant contends, the discovery of the fraud commences a *six-year* limitations period (under § 3731(b)(1)), then the provision in § 3731(b)(2) of a *three-year* period from discovery would be superfluous. Therefore, the court cannot so read it, for "a court should give effect to every provision of a statute and thus avoid redundancy among different provisions." *Landgraf,* ── U.S. at ──, 114 S.Ct. at 1494 (citing *Mackey v.*

---

4. The 1986 amendment to § 3731(b) applies retroactively, and therefore governs even those claims arising before 1986. *Chenault v. United States Postal Service,* 37 F.3d 535, 538 (9th Cir. 1994) (interpreting *Landgraf v. USI Film Products,* ── U.S. ──, ──────, 114 S.Ct. 1483, 1501–05, 128 L.Ed.2d 229 (1994), in which the Supreme Court held that *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988), governs only the retroactivity of substantive statutes, while *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), applies to the retroactivity of jurisdictional and procedural provisions, such as statutes of limitations); *see Garfield v. J.C. Nichols Real Estate,* 57 F.3d 662, 665 (8th Cir.1995); *Vernon v. Cassadaga Valley Cent. Sch. Dist.,* 49 F.3d 886, 890 (2nd Cir.1995); *see also Landgraf,* ── U.S. at ──, 114 S.Ct. at 1504 (citing *Bradley,* 416 U.S. at 713 n. 17, 94 S.Ct. at 2017 n. 17 (citing *Moores v. National Bank,* 104 U.S. 625, 26 L.Ed. 870

(1882) (applying a state supreme court's changed interpretation of a statute of limitations retroactively))).

5. The legislative history, like the statute, shows that Congress viewed § 3731(b)(1) (and the prior § 3731(b)) as commencing on the date of the violation, rather than upon the discovery of the violation: "[T]he subcommittee added a modification of the statute of limitations to permit the Government to bring an action within 6 years of when the false claim is submitted (current standard) or within 3 years of when the Government learned of a violation, whichever is later." S.Rep. No. 345, 99th Cong., 2d Sess. 15 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5280; *see also False Claims Act Amendments: Hearings Before the Subcomm. on Administrative Law and Governmental Relations of the House Comm. on the Judiciary,* 99th Cong., 2d Sess. 108, 118, 132 (1986).

*Lanier Collection Agency & Serv.,* 486 U.S. 825, 837 & n. 11, 108 S.Ct. 2182, 2189 & n. 11, 100 L.Ed.2d 836 (1988)).

■ Defendant has cited, and the court has found, no decision holding that the six-year limitations period of § 3731(b)(1) does not commence until the discovery of the violation, nor holding that the express three-year period commencing with discovery, in § 3731(b)(2), may be extended, instead, to six years. However, it is not clear what are alleged to be the relevant violations here (and thus when these occurred). If the violations are the falsification and submission of time cards to support claims (progress payment vouchers) filed between July 1984 and March 1987, then the first, second, eighth, and ninth counterclaims filed on May 17, 1995, more than six years later, would be untimely, unless fraud occurring after May 17, 1985 (within ten years before the government filed its counterclaim, the maximum limitations period under 31 U.S.C. § 3731(b)(2)) was discovered after May 17, 1992 (within three years from the discovery of the fraud, 31 U.S.C. § 3731(b)(2)).

Defendant alleges that the fraud was discovered, at the *earliest,* in 1990, specifically, on April 26, 1990, when employees of the Defense Contract Audit Agency met with the informant who made the allegations of time card falsifications.[6]

The government has not explained whether (or, if so, why) the alleged submission of the alleged final invoices on July 1, 1993, or of the certified claims on January 3, 1994,[7] is not the relevant violation for purposes of § 3731(b)(1). (It may be because the sums claimed in the final invoices and in the certi-

fied claims represent only a small proportion of the amounts paid based on the falsified time cards; however, the amount of damages sought by the counterclaims is not specified. While it is unlikely the entire amounts alleged to have finally been paid over under each contract (eighteen million and nineteen million dollars) are implicated, it appears likely that more than the amount claimed in plaintiff's certified claims is being demanded (without respect to double or treble damages).)

The sixth and thirteenth counterclaims, based on the certified claims filed January 3, 1994, were filed within six years thereafter, and therefore are timely. *Jankowitz v. United States,* 533 F.2d 538, 544–47, 209 Ct.Cl. 489 (1976) (action accrues when claim is made, even if conduct rendering the claim false occurred earlier).

*Common law counterclaims*

■ Common law causes of action, such as those asserted in the third, fourth, fifth, tenth, eleventh, and twelfth counterclaims, are not governed by the six-year statute of limitations on claims by the government arising from a contract, 28 U.S.C. § 2415(a), if they arise from the "same transaction or occurrence that is the subject matter of the opposing party's claim [against the United States]," 28 U.S.C. § 2415(f). *See Rhoades v. United States,* 222 Ct.Cl. 611, 613, 1980 WL 13126 (1980) (common law counterclaim that arises from the same transaction or occurrence is not subject to any statute of limitations); *Erie Basin Metal Prods. v. United States,* 150 F.Supp. 561, 566, 138 Ct.Cl. 67 (1957) (common law fraud counter-

---

6. However, the discovery that triggers 31 U.S.C. § 3731(b)(2) is not knowledge of the fraud by *any* government official, but knowledge of the fraud by an official having the authority to initiate litigation under the Act, generally considered to be an official at the Civil Division of the Department of Justice, which has exclusive litigating authority under the False Claims Act, 31 U.S.C. § 3730(a); *see Martin J. Simko Constr.,* 852 F.2d at 547; *United States v. Incorporated Village of Island Park,* 791 F.Supp. 354, 363 (E.D.N.Y. 1992); *see* S.Rep. No. 345 at 30, *reprinted in* 1986 U.S.C.C.A.N. at 5295; *see also United States v. Macomb Contracting Corp.,* 763 F.Supp. 272, 274 (M.D.Tenn.1990). *But see United States ex rel. Kreindler & Kreindler v. United Tech. Corp.,*

777 F.Supp. 195, 205 (N.D.N.Y.1991), *aff'd on other grounds,* 985 F.2d 1148 (2nd Cir.1993). Since the statute of limitations applicable to a violation not discovered until more than three years after the violation is three years, under § 3731(b)(2), and not six years, as defendant argues, it becomes very relevant whether defendant's FCA counterclaims were "discovered" on April 26, 1990.

7. To the extent the counterclaims are for costs also asserted in the January 3, 1994 certified claims, the counterclaims are coterminous with counterclaims six and thirteen, which are discussed *infra.*

claim not subject to any statute of limitations); S.Rep. No. 1328, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.C.C.A.N. 2502, 2506, 2508. Because the counterclaims arise from the same contracts as plaintiff's claims, they are not subject to any statute of limitations. *Simmonds Precision Prods. v. United States,* 546 F.2d 886, 892, 212 Ct.Cl. 305 (1976); *Sea–Land Serv. v. United States,* 493 F.2d 1357, 1371, 204 Ct.Cl. 57, *cert. denied,* 419 U.S. 840, 95 S.Ct. 69, 42 L.Ed.2d 67 (1974).

*Contract Disputes Act counterclaim*

■ The seventh counterclaim is brought under the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–09. The CDA fraud provision has a six-year statute of limitations. 41 U.S.C. § 604. The government claim arises no earlier than the submission of the contractor's certified claim under the CDA, regardless of when the conduct rendering the contractor's claim false allegedly occurred. *See SGW, Inc. v. United States,* 20 Cl.Ct. 174, 180–81 (1990) (citing *Jankowitz,* 533 F.2d at 546–47). The counterclaim is therefore timely.

*Special plea in fraud*

■ The special plea in fraud under 28 U.S.C. § 2514 is not subject to the statute of limitations. *Erie Basin Metal Prods.,* 150 F.Supp. at 566; *see also Goggin v. United States,* 152 F.Supp. 78, 81, 138 Ct.Cl. 279 (1957).

*Conclusion*

For the reasons stated above, plaintiff's motion to dismiss is granted only with respect to those portions of the first, second, eighth, and ninth counterclaims based on false claims submitted before May 17, 1989, and neither asserted subsequently, *e.g.,* in the Public Vouchers or in the January 3, 1994 certified claims, nor discovered after May 17, 1992. Defendant shall inform the court on or before December 8, 1995 when it deems discovery by an authorized official at the Department of Justice to have occurred, and present its argument regarding whether such date is the proper date of discovery

under the FCA. Plaintiff's response shall be due two weeks later.