**TS INFOSYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Nos. 94–208, 211C, 95–99C, 95–100C.

United States Court of Federal Claims.

Oct. 8, 1996.

Jeffrey A. Lovitky, Washington, D.C., and Phillip J. McNutt, of counsel, for plaintiff.

Domenique Kirchner, Washington, D.C., with whom were Acting Assistant Attorney General Frank W. Hunger and Director David M. Cohen, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case involves claims stemming from four government contracts between TS Infosystems, Inc., and the National Aeronautics and Space Administration ("NASA"). This case is before the court on plaintiff's motion to dismiss defendant's counterclaims. For the reasons set forth below, the court denies plaintiff's motion.

## FACTS

In July 1986, TS Infosystems, Inc., entered into negotiations for the lease of office space in Lanham, Maryland. Plaintiff and the owner of the office space allegedly agreed that plaintiff would receive six months free of rent, equity in the building, and $250,000 in return for paying the owner $13 per square foot instead of the standard rate of $12 per square foot. In January 1987, plaintiff moved into the new office space and received the $250,000 payment from the owner. The president and vice-president of TS Infosystems allegedly withdrew approximately $248,000 from plaintiff's account leaving only $2,063.71 to be used in calculating plaintiff's billing rates for its NASA contracts.

Defendant alleged that on May 18, 1987, the Defense Contract Audit Agency ("DCAA") informed plaintiff that the six months of free rent should be amortized and the equity position in the building should be valued at $140,000, not knowing of the $250,000 payment that would have lowered the approved billing rates. Defendant further alleged that on October 9, 1987, plaintiff submitted its incurred cost submission for 1986 which omitted the undisclosed $250,000 payment, and on March 14, 1989, plaintiff submitted its incurred cost submission for 1987 which also failed to report the $250,000 payment.

Plaintiff submitted numerous vouchers for services performed beginning with voucher 141, prepared on September 6, 1989, and ending with voucher 153, prepared on February 16, 1990. Defendant made payments beginning with voucher 141 on October 27, 1989, and ending with voucher 153 on August 1, 1990. Defendant alleged that the vouchers were false because they were based upon misleading information by plaintiff.

Plaintiff filed for Chapter 11 bankruptcy on March 23, 1989. On December 22, 1989, DCAA issued an audit report addressing plaintiff's rental expenses. The DCAA learned of the $250,000 payment and recommended that NASA account for this amount as rental credits for plaintiff, and estimated that a total of $500,420 needed to be accounted for during the 1986 to 1989 period. In rebuttal, plaintiff submitted a letter contending that the bankruptcy code prohibited the recommended cost adjustments. On May 28, 1991, plaintiff was given notice that its records for 1986 through 1989 should be adjusted to reflect total credits of $500,420. On June 14, 1991, plaintiff refused to adjust its records. On December 21, 1992, DCAA issued a second audit report affirming that $500,420 in adjustments were necessary.

Plaintiff requested additional indirect costs on May 19, 1993, alleging that defendant's changes to the levels-of-effort and place of performance caused total costs to exceed contractual ceiling rates. Alleging that defendant unreasonably delayed a final decision on these claims, plaintiff brought suit on April 1, 1994. Two of the four claims were dismissed for lack of proper subject matter jurisdiction. These claims were refiled on February 8, 1995.

On August 18, 1995, defendant filed a motion for leave to amend its answers and assert counterclaims pursuant to (1) the False Claims Act, 31 U.S.C. § 3729 (1994) ("FCA"), (2) the fraud provisions of the Contract Disputes Act, 41 U.S.C. § 604 (1994) ("CDA"), and (3) the Forfeiture of Fraudu-

lent Claims Act, 28 U.S.C. § 2514 (1994) ("FFCA").

On July 17, 1996, plaintiff filed a motion to dismiss all counterclaims because they were barred by the statute of limitations. Plaintiff does not challenge the allegations of defendant's counterclaims but only that the applicable statute of limitations period has run. Thus, the only issue to be considered is whether the statute of limitations prohibits these claims from being brought.

## DISCUSSION

### A. Standard of Review

■■■■ The statute of limitations is a jurisdictional issue in the Court of Federal Claims. *Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957). In ruling on a jurisdictional motion, the court considers whether the "facts reveal any possible basis on which the non-movant might prevail." *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). Further, "in passing on a motion to dismiss ... the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

The present task is limited to reviewing the sufficiency of the complaint, and the issue is "whether the claimant is entitled to offer evidence to support the claims," not whether plaintiff will ultimately prevail. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

### B. Statute of Limitations Under the False Claims Act (31 U.S.C. § 3729 et seq.)

The FCA prohibits claims brought:

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than

10 years after the date on which the violation is committed, whichever occurs last. 31 U.S.C. § 3731(b) (1994) (*as amended by* the False Claims Amendments Act of 1986, Pub.L. 99–562, § 5, 100 Stat. 3153, 3158).

#### 1. A Six–Year Minimum Statute of Limitations Period Applies

■■■■ Plaintiff claims that defendant knew about the alleged fraud as a result of the December 1989 audit report that was prepared by the DCAA, and therefore the counterclaims do not fall within the three-year statute of limitations period. Plaintiff's Motion to Dismiss Counterclaim, filed July 25, 1996, at 2 ("Plaintiff's Motion"). This claim assumes that such knowledge triggers a maximum time limit of three years.

Six years, however, is the *minimum* statute of limitations period under the statute. *Jana, Inc. v. United States,* 34 Fed.Cl. 447, 450 (1995). This six-year period may be increased by three years if the violation is not reasonably known after the date of the commission of the violation. *Id.* at 450. In any event, the statute of limitations cannot exceed ten years after the date that the violation was committed. *Id.*

Plaintiff's reading of the statute is unsupported by any case law. The three-year period is designed to enlarge the time in which to bring a claim if a party does not learn of the fraud until years after the fraud was committed. It is not meant to curtail the period in which claims can be filed. Therefore, defendant's counterclaim under 31 U.S.C. § 3731(b) is not barred by the three-year statute of limitations.

#### 2. Initiating the Six–Year Period Under the Statute of Limitations

The next issue to consider is when the statute of limitations began to run. Plaintiff claims that, at the latest, the six-year statute of limitations began to run when plaintiff submitted its budgets containing the inflated figures to the DCAA on March 14, 1989. Defendant claims that the six-year statute of limitations began to run upon the final payment to plaintiff which was made in reliance upon the fraudulent claims. This occurred on October 27, 1989.

The statute of limitations under 31 U.S.C. § 3731(b)(1) begins to run upon the commission of the violation. Thus, the issue is when a violation actually occurs. Many courts have held that the commission of the violation occurs on the date of the Government's final payment on the false claim. *See, e.g., United States ex rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1157 (2d Cir.1993) (holding the six-year limitations period begins to run upon date that payment is made), *cert. denied,* 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993); *United States v. Incorporated Village of Island Park,* 888 F.Supp. 419, 441–42 (E.D.N.Y.1995) (same); *United States ex rel. Hartigan v. Palumbo Bros., Inc.,* 797 F.Supp. 624, 629 (N.D.Ill.1992) (same); *United States ex rel. Duvall v. Scott Aviation,* 733 F.Supp. 159, 161 (W.D.N.Y.1990) (holding it is the payment and not the request which triggers the statute); *Blusal Meats, Inc. v. United States,* 638 F.Supp. 824, 829 (S.D.N.Y.1986) (finding that "[t]he six-year limitations period under the FCA begins to run on the date the claim is made or, if the claim is paid, on the date of the payment"), *aff'd,* 817 F.2d 1007 (2d Cir.1987). Since defendant made the final payment on October 27, 1989, under this test defendant's counterclaims, filed on August 18, 1995, fall within the six-year statute of limitations period.

### 3. General Equitable Tolling Doctrine

Plaintiff also argues that the statute of limitations should begin to run on the date the false claim was submitted. Although Plaintiff cites no cases to support such a contention, it is unnecessary to consider this claim due to the general equitable tolling doctrine. This doctrine allows courts to mitigate the statute of limitations in the proper circumstances. *Bailey v. Glover,* 88 U.S. 342, 347–48, 22 L.Ed. 636 (1874). The general equitable tolling doctrine was applied in *Tyger Construction Co. v. United States,* 28 Fed.Cl. 35 (1993), which dealt with whether the statute of limitations begins upon submission of alleged fraudulent claims. As the court noted, "fraudulent concealment provides a major justification for [suspending] a statute of limitations." *Tyger Constr. Co.,* 28

Fed.Cl. at 51. The court also stated that "[f]raud allegations ... differ in kind from other potentially time-barred allegations." *Id.* at 52; *see Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946) (holding that the general equitable tolling doctrine "is read into every statute of limitations"). Thus, this court could choose to waive the six-year limitation period under the circumstances.

In short, regardless of which test is applied to the facts of this case, defendant's counterclaim under the FCA is not barred by the statute of limitations.

### C. Statute of Limitations Under the Contract Disputes Act (41 U.S.C. § 604)

The CDA provides that:

> If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim. Liability under this subsection shall be determined within six years of the commission of such misrepresentation of fact or fraud.

41 U.S.C. § 604.

In the present case, plaintiff only argues that the CDA claim should be barred to the same extent that the FCA claim is barred. Since this court holds that the FCA claim is within the six-year limitations period, the CDA claim is not barred. Assuming *arguendo,* however, that the CDA and FCA claims were not linked, the CDA claim would still be allowed.

This court held in *SGW, Inc. v. United States,* 20 Cl.Ct. 174, 180–81 (1990) (citing *Holmberg,* 327 U.S. 392, 66 S.Ct. 582 (1946) and *Jankowitz v. United States,* 209 Ct.Cl. 489, 533 F.2d 538 (1976)), that the six-year statute of limitations under the CDA begins to run at the earliest time that the defendant "could have been aware of the alleged

fraud."[1] The commission of the misrepresentation or fraud does not actually occur until the party being defrauded becomes aware of it. "[T]he bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Id.* at 180 (quoting *Holmberg,* 327 U.S. at 396–97, 66 S.Ct. at 584–85 (citations omitted)); *see also Jankowitz,* 209 Ct.Cl. at 504, 533 F.2d 538 ("It is inconceivable to us that Congress intended to allow a false claimant to insulate himself from all liability merely by forestalling the time of filing such a claim until 6 years after the alleged fraudulent acts which make the filing possible."). Since the earliest defendant could have been aware of the fraud was December 22, 1989, the time when the DCAA made its audit report, the statute of limitations has not run. Therefore, the CDA claim is not time barred.

D. Statute of Limitations Under the Forfeiture of Fraudulent Claims Act (28 U.S.C. § 2514)

The FFCA provides that:

A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514.

█ In *SGW, Inc.,* this court held that the six-year statute of limitations in 28 U.S.C. § 2501[2] applies to FFCA claims made under 28 U.S.C. § 2514, also known as a special plea in fraud, when defendant's counterclaim is not an action "instituted by the Government." *SGW, Inc.,* 20 Cl.Ct. at

181. Like the CDA claim in *SGW Inc.,* the six-year limitation on 28 U.S.C. § 2514 begins to run when the fraud is discovered or the "earliest [time] defendant could have been aware of the alleged fraud."[3] *Id.* at 181. Thus, just as the CDA claim is not barred, the FFCA claim is within the six years of the statute of limitations period.

### CONCLUSION

For the reasons discussed above, plaintiff's motion to dismiss defendant's counterclaims under the False Claims Act, the Contract Disputes Act, and the Forfeiture of Fraudulent Claims Act is denied.

**IT IS SO ORDERED.**

---

1. This can only extend the period under the statute of limitations. If the date of knowledge precedes the date of contract, such knowledge cannot cut short the statute of limitations period.

2. The statute provides: "Every claim of which the United States Court of Federal Claims has

jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994).

