JANA, INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–203C.

United States Court of Federal Claims.

Sept. 3, 1998.

Donald O. Ferguson, San Antonio, TX, for plaintiff.

Harold D. Lester, Jr., Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director, for defendant.

*Opinion and Order* [1]

WEINSTEIN, Judge.

Plaintiff, Jana, Inc. (Jana) has moved for partial summary judgment on eight of the government's thirteen counterclaims for fraud under: the False Claims Act (FCA), as amended, 31 U.S.C. §§ 3729–3733 (1994); section 5 of the Contract Disputes Act of 1978(CDA), as amended, 41 U.S.C. § 604 (1994); and the common law. Plaintiff also seeks dismissal of defendant's special plea in fraud under 28 U.S.C. § 2415 (1994) and of defendant's claim for an offset under 28 U.S.C. § 1503 (1994). The first seven counterclaims arise from allegedly false claims under a 1980 time and materials contract with the Department of the Navy (Navy) to develop aeronautical/technical manuals and associated support services, contract No. N001–40–80–D–2454 (contract 2454). The eighth through thirteenth counterclaims concern a 1984 cost-plus-fixed-fee indefinite-delivery contract with the Navy, No. N001–40–85–D–E–260 (contract E–260), also to provide aeronautical manuals and related services.[2] The motion is denied.

The counterclaims were filed on May 17, 1995. On June 8, 1995, plaintiff moved to dismiss all of these counterclaims for lack of jurisdiction. The first ground argued is that all but five of plaintiff's invoices under these contracts having been submitted and reviewed by the government prior to October 27, 1986 were barred thereafter by the six-year statutes of limitations in the pre–1986 FCA[3] and Section 5 of the CDA, 41 U.S.C.

---

1. This opinion and order originally was filed on August 19, 1998. It is being reissued for publication at the government's request.

2. Plaintiff seeks dismissal of counterclaims one and two and eight through thirteen. Counterclaims one and two are for FCA damages in connection with false claims under contract 2454. Counterclaims 8 through 13 relate to contract E–260; counterclaims 8 and 9 are for FCA damages.

3. The FCA was amended in 1986 to provide two alternate statutes of limitation for civil actions under the FCA. Such actions must now be brought either within 6 years of the date the FCA violation is committed, § 3731(b)(1), or within "3 years after the date when facts material to the right of action are known or reasonably should

§ 604. Plaintiff argues that both statutes began to run upon the submission of a false invoice and did not begin, as the government argues, when the government made final payment of the claim. Second, plaintiff argues that defendant's allegations of jurisdiction were insufficient. Defendant argues that the six-year statute was equitably tolled, at the earliest, on April 26, 1990.

On November 15, 1995, the court ruled that the 1986 amendment to the FCA, adding 31 U.S.C. § 3731(b)(2) to the six-year statute of limitation under § 3731(b)(1), should be applied retroactively. Under 31 U.S.C. § 3731(b)(2), if the government doesn't know of the violation, the statute is not tolled until 3 years after the government knew or should have known of the false claim, but in no event until 10 years from the date of the violation. The court thus held that the only counterclaims barred were the portions of the first, second, eighth and ninth counterclaims based on false claims in connection with contract 2454 that were submitted before May 17, 1989 (6 years before the counterclaims were filed) and neither re-asserted subsequently nor discovered after May 17, 1992 (3 years before the counterclaims were filed). *See Jana, Inc. v. United States,* 34 Fed. Cl. 447 (1995).

The court's November 15, 1995 opinion also held that there was no statute of limitation for a special plea in fraud under 28 U.S.C. § 2415 or for common-law fraud counterclaims. Defendant, as required by the November, 1995 order, has presented the basis for its contention that the government did not discover the violation until after May 17, 1992. Thereafter, at the government's request, discovery was extended until after the Defense Contract Audit Agency (DCAA) completed an audit of plaintiff's claim under contract E–260, which was initially scheduled to be completed on December 31, 1996, but was not actually completed until July 10, 1997, due to plaintiff's delays in providing information to the auditor. Discovery closed on September 29, 1997.

Plaintiff's motion for partial summary judgment contends that the counterclaims regarding contract E–260 are barred, either by the FCA's six-year statute of limitations or because the July 10, 1997 DCAA audit report on the incurring, allowability, and allocation of costs found no fraud associated with contract E–260. Alternatively, plaintiff requests a ruling that the 3–year statute of limitations under the post–1986 FCA began to run in April or May of 1990, when the Department of Justice (DOJ) first received notice that certain irregularities had occurred with respect to this contract, and thus that the counterclaims were barred by the time they were filed in this court on May 17, 1995. Thus, effectively, plaintiff contends that the 3–year statute trumps the six-year statute. *See* 31 U.S.C. § 3731(b). Plaintiff also claims that the government has failed to plead fraud with the particularity required by Rule 9(b) of the Rules of the United States Court of Federal Claims (RCFC). And plaintiff yet again asks the court to reconsider its November 15, 1995 decision that the 1986 FCA amendment was retroactive and, thus, that defendant's FCA counterclaims regarding violations prior to May 17, 1989 under contract 2454 were not barred by the six-year statute but only until 3 years after defendant learned of the false claims (in 1992).[4]

Defendant continues to argue that the six-year statutory bar on claims for damages under the FCA does not begin to run until the date of payment of the fraudulent claim, within seven years of the violation, although the civil claim begins to run on the date of submission.[5] Defendant contends that this

---

have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed," § 3731(b)(2), whichever occurs last. *See* False Claims Amendments Act of 1986, Pub.L. 99–562, § 5, 100 Stat. 3153, 3158.

4. Plaintiff's first request for reconsideration and its "supplemental" motion for the same, both filed out of time, were returned unfiled because a motion for reconsideration of an order is due within 10 days of the order, *see* RCFC 83.2(f), and there was no showing of "excusable neglect," RCFC 6(b), to justify the late filing.

5. Plaintiff maintains that knowledge by any government official triggers the statute. Defendant argues that the relevant official is a DOJ Civil Division employee. The court has already con-

did not occur until October (or, at the earliest, July) of 1992. If so, the May 17, 1995 filing occurred within the three year time period allowed by the 1986 amendment to the FCA. Defendant also claims that the six-year statute, 31 U.S.C. § 3731(b)(1), does not begin to run until the date of final payment of a false claim, not, as plaintiff contends, on the date of plaintiff's request for payment. Alternatively, defendant contends that the 3-year statute did not begin to run until the government reasonably should have discovered the fraud, which event, it claims, occurred within ten years after the alleged violation(s).

### Background [6]

The following material facts are not in dispute:

On February 8, 1980, the Navy Regional Contracting Office (NRCC) awarded Jana a time-and-materials contract (contract 2454) in the amount of $4,492,445.00, to provide aeronautical/technical publication services to the Navy. Plaintiff's payment vouchers for delivery order ZZN5 under contract 2454 were signed by the contractor's representative between September 10, 1984 and March 9, 1987, and approved by the contracting officer (CO) between October 18, 1984 and March 17, 1987. Under contract 2454's delivery order ZZM3, Jana, by the contractor's representative, signed payment vouchers between August 13, 1984 and September 15, 1986, which were approved by the CO between September 25, 1984 and September 15, 1986. Contract 2454 is not the subject of this motion, except insofar as plaintiff again seeks to reopen the court's decision that the FCA statute of limitations was extended by the 1986 amendment.

On or about January 2, 1985, effective November 29, 1984, the contracting officer awarded Jana contract E-260, a cost-plus-fixed-fee indefinite-delivery contract for providing similar technical publication services for the NRCC, in the amount of $19,602,182.00.

On or about September 16, 1993, Jana submitted its final invoices for contract E-260. Jana submitted certified claims to the contracting officer, in the amount of $53,217.77 under contract 2454 and $529,695.75 under contract E-260, on or about January 3, 1994. Jana filed suit in this court on March 29, 1994, pursuant to the CDA, codified at 41 U.S.C. §§ 601-613, based on a deemed denial of its claims. See 41 U.S.C. § 605(c). On May 17, 1995, defendant filed its answer, which included thirteen counterclaims under the FCA, the CDA, common law fraud principles, a special plea in fraud under 28 U.S.C. § 2415, and a claim for an offset under 28 U.S.C. § 1503, for alleged fraud in connection with contracts 2454 and E-260.

As far as the record discloses, the government first became aware of the possibility of irregularities in Jana's time records related to the claims under contract 2454 in the spring of 1990, when a former Jana employee approached Mr. Robert J. Harrison, an auditor with the DCAA, and informed him that Jana had altered time cards to switch costs from an Army firm, fixed-price contract, which had been assigned labor charge code number 850179, to delivery order ZZM3 under contract 2454, which was a cost-reimbursement time and materials contract, to which delivery order plaintiff assigned the labor charge code of 850479. He showed Mr. Harrison a copy of a time card identifying time worked on job number "850179," as well as a copy of the same time card after it had been altered to show "850479," apparently by changing the "1" in 850179 to a "4," thus improperly billing the charge to the time and materials contract. Plaintiff has proffered no contemporaneous evidence that the informant provided the government with any other evidence or specific allegations regarding mischarges on other contracts or delivery orders, nor any contemporaneous evidence (other than two additional time cards [7]) in support of the informant's allegations.

---

cluded that defendant's argument is correct. *See* November 15, 1995 decision at note 6.

**6.** The facts and procedural background of this case are detailed more fully in the court's No-

vember 15, 1995 opinion, *Jana,* 34 Fed. Cl. at 448-449.

**7.** It is not clear from the record who (the former employee or Mr. Harrison) unearthed the other two time cards.

On May 24, 1990, Mr. Harrison sent to the Naval Investigative Service (NIS) an "Early Alert of Suspected Irregularity Referral Relating to Jana, Inc." (Early Alert) regarding delivery order ZZM3 under contract 2454. The Early Alert stated, in part: "The attached [Early Alert] form provides information that suggests a reasonable basis for suspicion of fraud, corruption, or other unlawful activity affecting government contracts. * * * Among the contracts being performed by the contractor were a Firm–Fixed–Price contract (Jana's Charge No. 850179) and a Time and Materials contract (Jana's Charge No. 850479). A copy of the time card provided by the informant ... reflects charges to the firm-fixed-price contract ...; whereas, the actual time card ... reflects charges to the Time and Materials contract.... Apparently the numeral one ... as entered by the employee on his time card [for the Fixed–Price Contract] was altered to reflect a numeral four ..., [thus] charg[ing the time] to the Time and Materials contract. * * * all three [time cards] indicate the charge number was altered." The time card presented by the informant was attached to the Early Alert.

Included on the distribution list for the Early Alert were the NIS, the DCAA, the Defense Logistics Agency, and the DPFU. The latter evidently refers to the Defense Procurement Fraud Unit within the Criminal Division of the DOJ.

In or about September, 1991, Mr. Winstanley F. Luke, an Assistant United States Attorney (AUSA), civil branch, for the Western District of Texas, was assigned a case of alleged fraud involving Jana, in connection with contract 2454, Delivery Order ZZM3. In November, 1991 he met with an NIS investigator, Ms. Cecilia Gomez, regarding possible mischarging by Jana on Delivery Order No. ZZM3. Mr. Luke, who was authorized to file civil FCA cases on behalf of the government, has stated under oath that he did not believe that the NIS had yet developed sufficient evidence upon which he could act or make a determination of whether Jana had violated the FCA.

On July 10, 1992, at their second meeting, Ms. Gomez informed Mr. Luke of a preliminary laboratory report, based on a random sample of time cards related to Delivery Order No. ZZM3, showing forensic evidence of numerous alterations. Mr. Luke swears that this was the first time he had a "concrete suspicion" that Jana had engaged in fraudulent mischarging under that delivery order. On October 14, 1992, the NIS issued a final Report of Analysis describing forensic laboratory findings (erasures, alterations, different ink, additional strokes, or write-overs) based on this scientific sampling of time cards under contract 2454. Mr. Luke swore in his deposition that he had no knowledge at that time of the involvement of a contract or delivery order other than ZZM3 under contract 2454.

### Discussion

A party moving for summary judgment initially must "show ... the absence of a genuine issue concerning any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). While the showing need not be based on affidavits, some proffer of evidence admissible to establish the material facts relied upon must be made. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The statute of limitations on a government counterclaim is an affirmative defense subject to waiver or estoppel. *See, e.g., Fisher v. Vassar College*, 70 F.3d 1420, 1452 (2d Cir.1995). Whether a claim is barred by the applicable statute of limitations is a question of law. *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir.1997); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 712 (9th Cir.1991).

The burden of establishing that the statute of limitations bars a government claim is on the non-claimant. *See Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed.Cir.1993) (burden of proof is on party that raises the affirmative defense); *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir.1995) (party raising the statute of limitations as an affirmative defense has the burden of proving the action is time-barred). Thus, the burden of proving the counterclaim is barred is on the plaintiff.

■ Plaintiff contends that the Early Alert must be deemed to have provided such notice of material facts as to trigger the amended FCA's three-year statute of limitations at the time it was first received by DOJ Civil Division employees, allegedly in May, 1990. Plaintiff alleges that, although DPFU "technically" was within DOJ's Criminal Division Fraud Section, it was staffed (in part) by attorneys from the DOJ's Civil Division (in addition to attorneys from the DOJ Criminal Division [and the military services], and AUSAs for the Eastern District of Virginia). Plaintiff also claims that the six-year statute bars the counterclaims because the violations occurred between 1982 and 1986.

However, plaintiff has proffered no direct evidence that any employee of the Civil Division actually saw the Early Alert on or soon after it was sent in 1990. Defendant, on the other hand, has submitted documentation indicating that, after June 6, 1989, the DPFU terminated its practice of routinely screening DOJ procurement fraud allegations. Defendant also has submitted documentation indicating that no more than one Civil Division attorney ever participated in the DPFU, and that this attorney's participation was limited to a liaison, not permanent employee, function. Defendant contends that this evidence indicates that it was unlikely that the DOJ attorney was on the distribution list for the Early Alert.

In addition, defendant points out, and plaintiff does not dispute, that the Early Alert allegations were, in any event, limited to one delivery order, Delivery Order No. ZZM3 for contract 2454, and thus "were insufficient to create a concrete suspicion of a fraudulent time mischarging scheme" involving other delivery orders or contracts. (The counterclaims also relate to other delivery orders under contract 2454). Defendant notes that the Early Alert itself referred only to a "suspected" irregularity, and mentioned no unfavorable evidence unearthed by any government investigation.

Defendant states, and plaintiff does not dispute, that information regarding possible time card falsifications relating to another delivery order under contract 2454, delivery order ZZN5, was not received until May of 1994. An investigatory file on this delivery order was created on May 5, 1994. Results from laboratory testing of random samples of time cards under delivery order ZZN5 were received on January 11, 1995. Ms. Gomez during this period received a case file to begin investigation of certain charges under contract E–260 (such as cross-charging charges between delivery orders, and charging administrative personnel costs directly to the contract rather than as overhead).

On April 4, 1995, DOJ requested a DCAA audit of contract E–260. Defendant has provided a copy of correspondence indicating that DOJ instructed the DCAA auditor to assume that Jana's time and accounting records (again, with respect to contract E–260, not contract 2454) were accurate and had not been fraudulently altered. This instruction is reflected in the report's prefatory statement that its review "addressed only the quantum issues of the claim, without regard to entitlement."

The audit report, issued on July 10, 1997, concluded: "The contractor has submitted adequate cost or pricing data. The claim was prepared in accordance with appropriate provisions of FAR [Federal Acquisition Regulations] and DFARS [Defense Department Federal Acquisition Regulations]." The 1997 audit report therefore "consider[ed] the claim to be acceptable as a basis of negotiation of a fair and reasonable settlement." The report took "no exception to the $529,696 claimed by the contractor."

Because plaintiff bears the burden of proffering evidence which, if admissible, would support its statement of facts, see *Advanced Cardiovascular Sys.*, 988 F.2d at 1161, plaintiffs assertion that the DOJ Civil Division received notice of the alleged false claims on May 24, 1990, or any time before May 17, 1992, must be rejected.

### *Rule 9(b) Objection*

■ Plaintiff's objection that the circumstances constituting fraud or mistake were not alleged with sufficient particularity has been waived by plaintiff's failure to make that objection in plaintiff's response to the counterclaims or, for that matter, for almost

two and one-half years after the counter-claims were filed. *Cf. Lasercomb Am., Inc. v. Reynolds,* 911 F.2d 970, 980 (4th Cir.1990) (Issues of fraud were appropriately treated as if raised in pleadings where no objection was made at trial to the admission of evidence showing fraud.) Further, lack of particularity in the complaint may be cured by a later disclosure. *See United States ex rel. Schiff v. Atlantic Basin Iron Works,* 53 F.Supp. 268, 271 (E.D.N.Y.1943) (complaint alleging false claim against the United States not dismissible even though lacking in particularity; rather, bill of particulars would be required). Here, defendant has fully disclosed, not only the basis for the FCA claim, but also the substantial evidence upon which it intends to rely.

Ironically, plaintiff claims that there was evidence of sufficient particularity to put defendant on notice of the fraud, yet, on the other hand, that the evidence was insufficiently detailed for purposes of RCFC 9(b). The stated basis for plaintiffs RCFC 9(b) objection thus is inconsistent with its argument that the Civil Division's notice was adequate. It is also incorrect. Plaintiff actually was informed of the particulars of defendant's fraud claim when, prior to the issuance of the report on which the FCA counterclaims were based and, thus, long before the filing of the counterclaims, plaintiff was given ample opportunity to review the report and learn the basis of defendant's fraud allegations. Moreover, any lingering doubt as to the basis for defendant's counter-claims must be deemed eliminated by plaintiff's full opportunity to obtain discovery from defendant, when this discovery exhaustively elicited the basis for defendant's counterclaims.

Finally, dismissals of complaints based on a RCFC 9(b) objection have been ordered, only at the trial stage or when the party against whom the objection is raised is intransigent about providing information. Presumptively, a plaintiff would not be preju-diced by non-disclosure at early stages of litigation, and the prejudice may be eliminated by full disclosure during discovery or by amendment of the FCA complaint or counterclaim. *Cf. Hayduk v. Lanna,* 775 F.2d 441, 445 (1st Cir.1985) (dismissal of plaintiff's fraud claim appropriate when plaintiff ignored two opportunities to amend the complaint).

■ In sum, the remedy for failure to allege fraud with the particularity required by rule 9(b), generally, is an order requiring particularity, not dismissal. Dismissal generally is granted only when a FCA complainant fails to amend following the objection. A RCFC 9(b) objection may be waived if not timely made in responsive pleading. *See Todaro v. Orbit Int'l Travel, Ltd.,* 755 F.Supp. 1229, 1234 (S.D.N.Y.1991). Also, a RCFC 9(b) objection, even if not waived, should not bar a counterclaim by the government. This may be surmised from RCFC 59(a)(2), which provides that, "upon satisfactory evidence ... that any fraud, wrong, or injustice has been done the United States," a counterclaim raised within 2 years after the final disposition of a case against the United States may provide the basis for the court to grant the United States a new trial. Finally, on the merits, it is hard to see how much more information defendant could have provided.

### *Retroactivity of the 1986 FCA Amendments*

■ The court again declines to reconsider its November 15, 1995 determination that the 1986 FCA amendment is to be applied retroactively, both on the grounds that, as a motion for reconsideration, it was not timely filed, *see* RCFC 59, and on the merits. Recent case law supports the court's prior decision that the statute of limitations is retroactive for an FCA claim that was not stale at the time it was filed.[8] *See, e.g., United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 6 F.Supp.2d 263 (S.D.N.Y.1998) (FCA amendment's statute of

---

8. Defendant's argument that reconsideration is precluded by the "law of the case" doctrine is misplaced. Law of the case rules prohibit a court from revisiting questions of fact or law necessarily decided by an appellate court or co-ordinate court in the same case, not from altering a prior ruling made by the same trial court. A trial court may revisit its own decisions at any time. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

limitation applies to all claims arising within six years prior to the October 27, 1986 effective date). *See also Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (FCA amendment does not apply retroactively to revive a claim already barred under the pre-existing statutory scheme at the time of the amendment's enactment).

### Event(s) Triggering the Running of the FCA's New Statute of Limitations

Plaintiff contends that the six-year statute of limitations of 31 U.S.C. § 3731(b)(1) and the ten-year statue of repose of 31 U.S.C. § 3731(b)(2) began to run on the date the false claim was submitted, regardless of when, or whether, the claim was paid. Defendant, on the other hand, contends that, for an FCA claim for actual damages, the limitations period began to run on the date on which the false claim was paid, since the government did not incur actual damages until it had made payment in reliance upon the false claim.

The resolution of this issue affects several vouchers of Delivery Orders ZZN5 and ZZM3 of contract 2454, which were submitted prior to May 17, 1985, but were paid after that date. Vouchers 8 and 9 of Delivery Order ZZN5, were signed by the contractor's representative (and presumably submitted for payment) on May 16, 1985, and May 13, 1985, respectively, but were approved by the CO for payment (and presumably paid) on June 13, 1985 and June 6, 1985, respectively. *See* Appendix to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, pg. 8. Vouchers 9 and 10 of Delivery Order ZZM3, also were signed by the contractor's representative (and presumably submitted for payment) on May 16, 1985, and May 13, 1985, respectively, and were approved by the CO for payment (and presumably paid) on June 13, 1985 and June 6, 1985, respectively. *Id.* at 9. FCA claims based on these vouchers, therefore, would be time-barred by the ten-year repose provision if the running of the repose period is triggered by the submission of the false claim, rather than by the payment of the claim.

As plaintiff correctly points out, there is no binding precedent on this issue from the U.S. Supreme Court, the Federal Circuit, or the Court of Claims. The decisions from other circuits have been split on the issue. The majority of district courts (and a court of appeals) considering the issue have concluded that, if the government makes payment on a submitted false claim, the FCA statute of limitations starts running on the date payment was made, rather than on the (earlier) date the claim was submitted. *See, e.g., United States v. Incorporated Village of Island Park*, 888 F.Supp. 419, 441 (E.D.N.Y. 1995) (six-year statute of limitations period of § 3731(b)(1) begins to run on date of submission of claim for payment, or, if the claim is paid, from the date of payment); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1157 (2d Cir.1993) (noting the same in dicta); *United States ex rel. Duvall v. Scott Aviation*, 733 F.Supp. 159, 161 (W.D.N.Y.1990) ("[i]t is the payment not the request which triggers the statute"); *United States v. Klein*, 230 F.Supp. 426, 441 (W.D.Pa.1964) (holding that 31 U.S.C. § 235, the predecessor to § 3729, did not become operative until final payment had been made on the false claims), *aff'd*, 356 F.2d 983 (3d Cir.1966). *Cf. United States ex rel. Hartigan v. Palumbo Bros.*, 797 F.Supp. 624, 629 (N.D.Ill.1992) (claim is not complete, for purposes of determining applicability of 1986 amendments to FCA, before the last date when the Government paid any money on a particular claim). However, some lower court cases have concluded that the statute of limitations starts running on the date of the false claim submission rather than of its payment. *See. e.g., United States v. Vanoosterhout*, 898 F.Supp. 25, 29 (D.D.C.1995), *aff'd*, 96 F.3d 1491 (D.C.Cir.1996); *United States ex rel. Colunga v. Hercules, Inc.*, No. 89–CV–954 B, 1998 WL 310481 *2–3 (D.Utah Mar. 6, 1998); *United States ex rel. Condie v. Board of Regents of Univ. of Cal.*, No. C89–3550–FMS, 1993 WL 740185 *3 (N.D.Cal. Sept. 7, 1993).[9]

9. Plaintiff cites Scott K. Zesch, Annotation, *When* *Does Statute of Limitations Begin to Run in Ac-*

The statutory language of sections 3729 and 3731(b) supports defendant's position that, if a false claim is paid, the limitations periods of section 3731(b) begin to run from the date of payment. Section 3731(b) provides that both the six and ten year limitations periods begin to run on "the date on which the violation of section 3729 is committed." *See* 31 U.S.C. § 3731(b)(1) and (2). The question therefore is what constitutes a violation of section 3729 for purposes of triggering the statute of limitations. It is clear that the submission of a false claim, whether or not the claim is paid, is a violation of section 3729, *see* section 3729(a)(1), for which the false claimant is liable to the government for civil penalties and for 2–3 times the actual damages sustained by the government as a result of the false claim. *See* § 3729(a). However, since section 3729 provides for the false claimant to be liable for actual damages, this suggests that when payment is made on the false claim, the "violation of section 3729" encompasses not only the false claim but also the payments on that claim.

 Moreover, "[u]nder federal law governing statutes of limitation, a cause of action accrues when all events necessary to state a claim have occurred." *Chevron U.S.A., Inc. v. United States*, 923 F.2d 830, 834 (Fed.Cir. 1991). In the case of a FCA claim seeking civil penalties, all events necessary to state a claim have occurred upon the submission of the false claims to the government. However, in the case of a FCA claim for actual damages, all the events necessary to state the government's claim do not occur until the government has made full payment on the claim, since the government does not incur actual damages until then.

For the reasons stated above, the court holds that, when the government pays a false claim, the FCA statute of limitations

begins to run on the date of final payment. Therefore, defendant's counterclaims relating to Vouchers 8 through 32 of Delivery Order ZZN5, and Vouchers 9 through 26 of Delivery Order ZZM3, are not barred by section 3731(b)(2)'s ten year statute of repose.

### *Conclusion*

For the reasons stated above, plaintiff's motion for partial summary judgment is denied. The parties shall jointly prepare and submit a proposed schedule for further proceedings on or before August 28, 1998.

---

tion under *False Claims Act (31 U.S.C.A. §§ 3729–3733),* 139 A.L.R. 645 § 4 (1997) and "the cases cited therein" for the proposition that the majority rule is that the limitation period begins to run when a claim is presented to the government agency for payment, rather than when the claim is paid. Most of the cases cited in § 4 of the annotation did not address the issue of whether the date of payment or of claim submission was the triggering date for the FCA statute of limitations, but merely held that the limitation period

begins to run *no earlier* that the date on which the false claim is submitted. *See, e.g., United States v. Ettrick Wood Prods., Inc.,* 774 F.Supp. 544, 552, 552 n. 12 (W.D.Wis.1988) (holding that the statute does not begin to run until, at least, a demand has been made upon the government, but determining that the facts of that case made it unnecessary to choose between the date of demand and the date of actual payment as the triggering date for the running of the statute of limitations).