UNITED STATES of America ex rel.
Joyce RILEY, Plaintiff,

v.

ST. LUKE'S EPISCOPAL HOSPITAL,
et al., Defendants.

Civil Action No. H–94–3996.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 21, 1997.

Frank W. Hunger, Asst. Atty. Gen., Michael F. Hertz, Joyce R. Branda, Rosemary A. Filou, Attys., Civ. Div., U.S. Dept. of Justice, Commercial Litigation Branch, Washington, DC, for U.S.

Carol S. Barnes, ARM, Office of Risk Management, Ins. Manager, Baylor College of Medicine, Houston, TX, Samuel S. Crocker, Vice President for Legal Affairs, Baylor College of Medicine, Houston, TX, Barry Aranowitz, Directors and Officers Liability, A.I. Management and Professional Liability Claim Adjusters, New York, NY, Carol Resh, Sr. Claims Administrator, Johnson & Higgins of Texas, Inc., Houston, TX, for Defendant Baylor College of Medicine.

Jim M. Perdue, Sr., JoAnn Bennett, Jim M. Perdue, Jr., Houston, TX, for Qui Tam Plaintiff/Relator.

L. Boyd Smith, Jr., Vinson & Elkins, L.L.P., Houston, TX, for St. Luke's Hosp., Dr. Branislav Radovancevic and Texas Heart Institute.

Toni Hunter, Office of Atty. Gen., Austin, TX, for University of Texas Health Science Center.

Jeffrey B. McClure, Mayor, Day, Caldwell & Keeton, L.L.P., Jeffrey D. Meyer, Houston, TX, for Defendants Surgical Associates of Texas, P.A. and O. Howard Frazier, M.D.

Brian P. Johnson, Hanen, Alexander, Johnson & Spalding, Houston, TX, for Defendant Edward K. Massin, M.D.

## MEMORANDUM OPINION

HOYT, District Judge.

This *qui tam* suit filed under the False Claims Act ("FCA") raises a significant issue of constitutional proportions: whether the federal Constitution permits Congress to confer standing upon a *qui tam* plaintiff who has suffered no cognizable injury under Article III of the Constitution. The Court concludes that Congress may not do so, consistent with the principles of "separation of powers."

### I. Statement of Facts and Procedure

The *qui tam* plaintiff in this suit, Joyce Riley, alleges that some of the defendants filed false claims for Medicare and Medicaid reimbursement during her employment as a nurse at St. Luke's Episcopal Hospital in Houston. She filed this suit as a *qui tam* relator under the FCA, to vindicate the interests of the United States in preventing fraud against the government. 31 U.S.C. §§ 3729, 3730 (Supp.1997). The United States declined to intervene in the suit, pursuant to section 3730(b) of the statute, although it did file an amicus brief in favor of the constitu-

tionality of the *qui tam* provisions of the Act. The defendants have filed various motions to dismiss Riley's claim.

## II. Background on the Qui Tam Provisions of the False Claims Act

Congress enacted the FCA in 1863, during the emergency of the Civil War, as the "primary litigative tool for combating fraud against the federal government." SENATE JUDICIARY COMM., FALSE CLAIMS AMENDMENTS ACT OF 1986, S. REP. No. 99–345, at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266. President Lincoln sought such a law to combat profiteering by Union Army suppliers. *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1497 (11th Cir.1991). The Act authorized district attorneys (precursors to United States Attorneys) and private persons to bring suit, with the incentive of recovering a share of the damages. *Id.* When the Act was passed, the attorney general's office was in its infancy and the Department of Justice would not come into being until 1870. Ara Lovitt, *Fight for Your Right to Litigate: Qui Tam, Article II, and the President,* 49 STAN. L. REV. 853, 856 & n. 20 (1997). After the Civil War, the FCA fell into disuse until World War II, and again until 1986 when Congress amended the Act to increase the financial incentives for individuals to bring such suits. *Id.* at 856–57; S. REP. No. 99–345, at 2, 23–24, *reprinted in* 1986 U.S.C.C.A.N. at 5267, 5288–89.

The current version of the FCA authorizes both the United States Attorney General and private persons to bring civil actions to enforce the Act's prohibitions on fraud against the United States government. 31 U.S.C. § 3730 (Supp.1997). The private plaintiff is known as a *"qui tam* plaintiff" or "relator." *Qui tam is* short for the Latin phrase, *"qui tam pro domino rege quam pro se imposo sequitur,"* meaning "who brings the action as well for the king as for himself." *Bass Anglers Sportsman's Soc'y v. United States Plywood–Champion Papers, Inc.,* 324 F.Supp. 302, 305 (S.D.Tex.1971).

Under the amended FCA, the relator brings the action in the name of the government, and files his complaint under seal for 60 days, during which time the government determines whether to intervene in the action. 31 U.S.C. § 3730(b)(1), (2). If the government chooses to intervene, it may proceed with the action itself, exercising primary responsibility for the action. *Id.* § 3730(b)(4), (c)(1). The relator may continue as a party to the suit, although the government is not bound by the relator's acts. *Id.* § 3730(c)(1). If the government declines to take over the action, the relator may pursue it alone, although the court may later allow the government to intervene upon a showing of good cause. *Id.* § 3730(c)(1), (3).

The Act places certain restrictions on the government's ability to dismiss or settle a suit initiated by a relator, and grants the courts an active role in such determinations. The action may be dismissed only if the court and the attorney general give written consent to dismissal along with their reasons for consenting. *Id.* § 3730(b)(1). The government may settle such an action only if the court determines after a hearing "that the proposed settlement is fair, adequate, and reasonable under all the circumstances." *Id.* § 3730(c)(2)(B).

As an incentive for prosecuting the case, the relator receives a certain percentage of any proceeds recovered, depending on whether the government intervenes in the action. If the government intervenes, the relator receives between 15 percent and 25 percent of the recovery. *Id.* § 3730(d)(1). If the relator has pursued the claim alone, he receives between 25 percent and 30 percent of the recovery. *Id.* § 3730(d)(2). The court determines the appropriate amount of the recovery depending on the extent to which the relator "substantially contributed to the prosecution of the action," or according to what is "reasonable." *Id.* § 3730(d)(1), (2).

## III. Standing of the Qui Tam Plaintiff

### A. The Irreducible Constitutional Minimum

■ The threshold question that this Court must answer is whether the *qui tam* plaintiff meets Article III's standing requirement in order to bring a suit in federal court. "The jurisdiction of the federal court is defined and limited by Article III of the Constitution" and is limited to "cases" and "controversies." *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968). The law of Article III standing is built upon the principle of separation of powers. *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). The standing

requirement avoids "convert[ing] the judicial process into 'no more than a vehicle for the vindication of the value interests of concerned bystanders.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982) (quoting *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2415–16, 37 L.Ed.2d 254 (1973)).

The "irreducible constitutional minimum" of standing consists of three elements: First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992) (citations omitted).

The "injury-in-fact" test requires more than simply an injury to a cognizable interest. "It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972). In addition, a court must look to the substantive issues of the case "to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated." *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968).

In addition to these minimum requirements imposed by Article III, prudential requirements also bear on standing, including the general requirement that (1) a plaintiff assert his own legal rights and interests and not those of third parties, and (2) the plaintiff's complaint falls within the "zone of interests" protected by the statute in question. *Valley Forge*, 454 U.S. at 474–75, 102 S.Ct. at 759–60 (citations omitted).

**B. Asserting the Government's Interests**

Qui tam plaintiffs admittedly are not asserting their own personal interests, but rather the interests of the federal government in combating fraud. Other courts considering standing challenges to the *qui tam* provisions of the FCA have found standing on the basis that the federal government is the "real party in interest." *See, e.g., United States ex rel. Berge v. Board of Trustees*, 104 F.3d 1453, 1457 (4th Cir.1997); *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir.1994); *United States ex rel. Kreindler v. United Technologies, Corp.*, 985 F.2d 1148, 1154 (2d Cir.1993).

The Ninth Circuit has expanded on this theory, explaining that the FCA "effectively assigns the government's claims to *qui tam* plaintiffs ..., who then may sue based upon an injury to the federal treasury." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 748 (9th Cir.1993). Under this theory, "the FCA's qui tam provisions operate as an enforceable unilateral contract. The terms and conditions of the contract are accepted by the relator upon filing suit." *Id.*

The Ninth Circuit reasons that the federal government meets the injury-in-fact, causation, and redressability requirements of standing. *Id.* Recognizing that Article III requires that the plaintiff himself must have suffered an injury, the Ninth Circuit asserts that *qui tam* plaintiffs have a personal stake in the outcome of the suit when three factors are present: (1) the relator must find the prosecution of the suit; (2) the relator receives a sizeable bounty if he prevails; and (3) he may be liable for costs if the suit is found to be frivolous. *Id.* at 749; *see also United States ex rel. Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1154 (2d Cir.1993) (holding same). This is strained logic and the Supreme Court has rejected similar arguments, that a cognizable injury is created by such "byproducts" of the litigation. *See Diamond v. Charles*, 476 U.S. 54, 70, 106 S.Ct. 1697, 1707–08, 90 L.Ed.2d 48 (1986).

In *Diamond*, a plaintiff claimed that an award of an attorney's fee by the trial court gave him a direct stake in the enforcement of a state abortion law. The Court rejected such reasoning, observing that "Art. III

standing requires an injury with a nexus to the substantive character of the statute or regulation at issue." *Id.* The Court held that this nexus was not met because any liability for such an attorney's fee is a "consequence" of the litigation, and as a result, "it cannot be fairly traced to the [law at issue]." *Id.* As the Court went on to state,

> The fee award is wholly unrelated to the subject matter of the litigation, and bears no relation to the statute whose constitutionality is at issue here.... The mere fact that continued adjudication would provide a remedy for an injury that is only a byproduct of the suit itself does not mean that the injury is cognizable under Art. III.

*Id.*

Similarly, the *qui tam* plaintiff's funds expended in the litigation, the possibility of recovering a bounty, and any court costs imposed do not constitute an injury traceable to the substance of the FCA's prohibitions on fraud. Such investments of money and time in a lawsuit may be claimed in almost any lawsuit, and are not a substitute for a "real" injury permitting Art. III standing. Again, the remedy is but a by-product of the suit itself, not the basis for the suit.

### C. Assignment Theory

■ The "assignment" theory, which assumes that Congress assigned the government's inchoate "interest" in future lawsuits to unnamed, future plaintiffs, also fails and for three reasons. First, there is no indication in the statute that Congress was attempting to bestow a contract right to recover damages on the *qui tam* plaintiffs, who were not even identified at the time of passage, and are not identifiable until they themselves initiate a suit.

■ Second, to make an effective assignment of a contract right under common law, "the *owner* of that right must manifest an intention to make a *present* transfer of the right *without further action* by the owner or by the obligor." 3 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 11.3, at 67 (1990). Congress is not the "owner" of the right to prosecute fraud cases, to the contrary, the right belongs to the Executive Branch. The Constitution requires the Executive to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 3. Ours is a system of separated *powers,* and

Congress is *powerless* to distribute *powers* that it does not have.

■ In addition, the purported assignment was not a present transfer of an existing right. A promise to make an assignment in the future is not an assignment. FARNSWORTH, *supra,* at 69. The common law places limits on the assignability of future rights not yet in existence, although it recognizes the ability to assign existing rights that have not yet ripened because they are conditioned on a future event. *Id.* § 11.6, at 87. Nevertheless, no right existed at the time of the alleged assignment. Even assuming that Congress could assign the Executive's right to prosecute at the time of the Act's amendment, any interest in recovering damages in a future case would not be a vested interest capable of transfer. *See In re Confiscation Cases,* 74 U.S. (7 Wall.) 454, 461, 19 L.Ed. 196 (1868) (holding that a *qui tam* "informer" had no vested interest in the suit that would prevent the attorney general from dismissing the suit).

The third reason that the assignment theory must fail is that, allowing a *qui tam* plaintiff to litigate on behalf of the injuries of the United States would effectively permit Congress to circumvent the Constitution's standing requirements by merely passing a statute assigning a governmental cause of action to an individual. *See* James T. Blanch, *Note: The Constitutionality of the False Claim's Act's* Qui Tam *Provision,* 16 HARV. J.L. & PUB. POL'Y 701, 716 (1993). Even proponents of the assignment theory recognize its potential to swallow the Constitution's standing rule. *See* Thomas R. Lee, *The Standing of Qui Tam Relators Under the False Claims Act,* 57 U. CHI. L. REV. 543, 569 (1990). Significantly, Congress could create standing for any individual simply by passing a law to create a cause of action, and then assign the right to litigate to *qui tam* plaintiffs. *Id.*

In addition, if this assignment theory is permitted to stand, there is little to stop Congress from adding *qui tam* provisions to even federal criminal statutes. *Id.* Such a result cannot be squared with established Supreme Court standing doctrine. The Court has allowed only limited exceptions to the general prudential rule that a plaintiff must assert his own legal rights and interests, rather than those of third parties. The Court has

recognized the rights of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied: The litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect his or her own interests.

*Powers v. Ohio,* 499 U.S. 400, 410–11, 111 S.Ct. 1364, 1370–71, 113 L.Ed.2d 411 (1991) (citations omitted).

Even when the Court has allowed "citizen suits" or suits by "private attorneys general,"[1] it has not dispensed with the injury-in-fact requirement. *See, e.g., Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453, U.S. 1, 16, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981) (holding that citizen-suit provisions of Federal Water Pollution Control Act "apply only to persons who can claim some sort of injury"); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 578, 112 S.Ct. 2130, 2145–46, 119 L.Ed.2d 351 (1992) (holding that citizen-suit provisions of the Endangered Species Act may not abandon the requirement of injury); *Sierra Club v. Morton,* 405 U.S. 727, 735, 741, 92 S.Ct. 1361, 1369, 31 L.Ed.2d 636 (1972) (holding that an environmental group lacked standing to challenge national park development because it lacked an injury).

*Qui tam* suits under the FCA also differ from *jus tertii* cases, in which the Court has permitted litigants to raise the rights of third parties. In such cases, the Court has required the plaintiff to assert third parties' rights only if the plaintiff also demonstrates that the challenged action caused him injury-in-fact. *See Craig v. Boren,* 429 U.S. 190, 192–97, 97 S.Ct. 451, 454–57, 50 L.Ed.2d 397 (1976) (allowing vendor of beer, who suffered injury-in-fact, to rely upon "equal protection"

objections of males 18 to 20 years of age in challenging drinking age law).

 Because the standing requirement is integral to our system of separated powers,[2] courts should not allow Congress to legislatively circumvent Article III's standing requirements. As the Supreme Court noted in *Lujan,*

> To permit Congress to convert the undifferentiated public interest in executive officers' compliance with the law into an "individual right" vindicable in the courts is to permit Congress to transfer from the President to the courts the Chief Executive's most important constitutional duty, to "take Care that the Laws be faithfully executed," Art. II, § 3.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 577, 112 S.Ct. 2130, 2145, 119 L.Ed.2d 351 (1992).

### C. Congressionally Created Standing

Other courts have justified standing for *qui tam* plaintiffs under the FCA on grounds that Congress simply extended Article III standing to them under the statute. *See, e.g., United States ex rel. Kreindler v. United Technologies, Corp.,* 985 F.2d 1148, 1154 (2d Cir.1993); *see also United States ex rel. Hall v. Tribal Dev. Corp.,* 49 F.3d 1208, 1214 (7th Cir.1995) (upholding *qui tam* provision under another statute).

In *Kreindler,* the Second Circuit held that the *qui tam* plaintiff had standing because Congress created a legal interest in the statute and conferred the standing to assert it. *Kreindler,* 985 F.2d at 1153. The Court reasoned that the injury may exist solely because of a statute creating legal rights, the invasion of which creates standing. *Id.* (citing *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975)). The Court went on to state, however, that where Congress confers such rights in statutes, "the prudential, judicially-created limi-

---

**1.** One of the lead proponents of the False Claims Amendments Act of 1996, Representative Howard Berman, characterized the Act's purpose as to "deputize ready and able people who have knowledge of fraud against the government to play an active and constructive role through their counsel to bring to justice those contractors who overcharge the government." *United States ex rel. Truong v. Northrop Corp.,* 728 F.Supp. 615, 618 (C.D.Cal.1989) (quoting 132 Cong. Rec.

H9388 (daily ed. Oct. 7, 1986) (statement of Rep. Berman)).

**2.** As James Madison wrote in the *Federalist Papers,* the "separate and distinct exercise of the different powers of government ... is admitted on all hands to be essential to the preservation of liberty." The Federalist No. 51, at 321 (James Madison) (Clinton Rossiter ed., 1961).

tations on standing-such as individualized or particularized injury to the plaintiff-are not required, although the plaintiff must still allege some injury." *Id.* at 1153–54.

 The Supreme Court has flatly rejected the notion that a statutory right obviates the need for an "injury-in-fact." The Court has defined "injury-in-fact" as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). This requirement is part of the "irreducible constitutional minimum of standing," *id.*, and is not merely a prudential requirement that can be discarded by the passage of simple legislation.

The Article III requirement of standing is not minimized in any way by the fact that Congress created a statutory interest. As the Court stated in *Sierra Club* and again in *Lujan*, "[Statutory] broadening [of] the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Sierra Club v. Morton*, 405 U.S. 727, 738, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972); *Lujan*, 504 U.S. at 578, 112 S.Ct. at 2146. The Second Circuit's implication that the injury requirement is somehow eliminated or minimized simply by virtue of a congressional statute flies in the face of the well-established standing doctrine. Again, the Supreme Court noted in *Lujan*,

> [T]here is absolutely no basis for making the Article III inquiry turn on the source of the asserted right. Whether the courts were to act on their own, or at the invitation of Congress, in ignoring the concrete injury requirement described in our cases, they would be discarding a principle fundamental to the separate and distinct constitutional role of the Third Branch—one of the essential elements that identifies those "Cases" and "Controversies" that are the business of the courts rather than of the political branches.

*Lujan*, 504 U.S. at 576, 112 S.Ct. at 2144–45.

## D. Dicta Supporting Qui Tam Actions

Other Courts upholding *qui tam* suits under the FCA have pointed to dicta that seemingly approves of such litigation. In 1905, the Supreme Court, in *Marvin v. Trout*, rejected a challenge brought under the Takings Clause of the Fourteenth Amendment to a state gambling statute that allowed "any person" to sue for and recover money lost in gambling. 199 U.S. 212, 212 n. 1, 26 S.Ct. 31, 31–33 n. 1, 50 L.Ed. 157 (1905). After upholding the statute based upon the state's police power to control gambling, the Court stated in dicta that

> Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government. The right to recover the penalty or forfeiture granted by statute is frequently given to the first common informer who brings the action, although he has no interest in the matter whatever except as such informer.

*Id.* at 225, 26 S.Ct. at 34–35 (citations omitted).[3]

The Court in *Marvin* did not address the informer's standing or any Article III requirement of injury-in-fact. It did, however, state that the informer had "no interest whatever" in the action, an admission that would not permit the informer's claim to survive standing scrutiny. The Court's modern conception of standing, as an Article III requirement, did not come into being until relatively recently. James T. Blanch, *The Constitutionality of the False Claims Act's* Qui Tam *Provision*, 16 HARV. J.L. & PUB. POL'Y 701, 721–22 (1993). Before the turn of the century, justiciability turned on the formalistic requirements of the writ system, rather than the plaintiff's relationship to the matter. *Id.* at 722. Therefore, *Marvin*'s brief discussion is not binding or precedential.

The Supreme Court again briefly addressed "informer suits" in dicta in *Lujan*, distinguishing them from the case before it,

---

**3.** *See also United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n. 4, 63 S.Ct. 379, 382–83, 87 L.Ed. 443 (1943) (mentioning that *qui tam* suits "have been frequently permitted by legislative action," but not addressing standing requirements).

which the court of appeals had justified on the basis that the plaintiffs suffered a "procedural injury" under the Endangered Species Act. The Court stated, "Nor ... is it the unusual case in which Congress has created a concrete private interest in the outcome of a suit against a private party for the government's benefit, by providing a cash bounty for the victorious plaintiff." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572–73, 112 S.Ct. 2130, 2143, 119 L.Ed.2d 351 (1992). Because the *qui tam* provisions of the FCA were not before the Court, this statement has no precedential value, and there is no indication that the Court fully considered the standing problems of *qui tam* plaintiffs or endorsed such legislation. As discussed, *supra*, the potential of a cash bounty alone cannot create the requisite injury-in-fact for Article III standing. Nor can Congress statutorily do away with the injury-in-fact requirement.

The Fifth Circuit has addressed the standing of a *qui tam* plaintiff under the FCA only once to date, stating summarily in 1977 that the statute "grants informers standing to sue and an award for successful action under the statute." *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460 (5th Cir. 1977). It appears that the standing issue was not squarely presented and the court simply never addressed Congress's ability to confer standing. Also missing from the opinion is the recognition that an injury-in-fact is a requirement for standing. Such cursory statements in favor of *qui tam* actions are neither precedential nor persuasive.

### E. History of Qui Tam Actions

■ Courts upholding *qui tam* provisions have made much of its historical use in England and the post-Revolutionary United States. *See, e.g., United States ex rel. Milam v. University of Tex. M.D. Anderson Cancer Ctr.*, 961 F.2d 46, 49 (4th Cir.1992). The historical use of *qui tam* actions is not

proof of its constitutionality, however. History alone cannot validate a practice that violates constitutional law. *Marsh v. Chambers*, 463 U.S. 783, 790, 103 S.Ct. 3330, 3334–35, 77 L.Ed.2d 1019 (1983). As the Court observed, "no one acquires a vested or protected right in violation of the Constitution by long use, even when that span of time covers our entire national existence and indeed predates it." *Walz v. Tax Comm'n*, 397 U.S. 664, 678, 90 S.Ct. 1409, 1416, 25 L.Ed.2d 697 (1970).[4] Thus, historical precedent certainly cannot overcome the strict standing requirements of Article III.

And, this Court will not "press statutory construction 'to the point of disingenuous evasion'" to avoid a constitutional question. *Public Citizen v. Department of Justice*, 491 U.S. 440, 467, 109 S.Ct. 2558, 2573, 105 L.Ed.2d 377 (1989) (quoting *United States v. Locke*, 471 U.S. 84, 96, 105 S.Ct. 1785, 1793–94, 85 L.Ed.2d 64 (1985)). Article III's requirements are clear, and are not to be avoided by courts eager to uphold the constitutionality of congressional enactments. As the Supreme Court has emphasized,

> The exercise of judicial power, which can so profoundly affect the lives, liberty, and property of those to whom it extends, is therefore restricted to litigants who can show "injury-in-fact" resulting from the action which they seek to have the court adjudicate.

*Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982).

### IV. Conclusion

The Court finds that the *qui tam* plaintiff in this case has suffered no injury-in-fact as required by Article III of the Constitution. The plaintiff has alleged no injury to a cogni-

4. Indeed, even laws passed by the first Congress have been held unconstitutional. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803) (holding unconstitutional portion of Judiciary Act of 1789); *New York Times Co. v. Sullivan*, 376 U.S. 254, 276, 84 S.Ct. 710, 723–24, 11 L.Ed.2d 686 (1964) (noting Consensus that Sedition Act of 1798 was unconstitutional); *Wallace v. Jaffree*, 472 U.S. 38, 100, 105 S.Ct. 2479, 2512, 86 L.Ed.2d 29 (1985) (Rehnquist, J., dissenting) (noting first Congress's aid to sectarian schools, later held unconstitutional); *see also* William P. Barr, Assistant Attorney General, Office of Legal Counsel, Memorandum to Dick Thornburgh, Attorney General, Re: Constitutionality of the Qui Tam Provisions of the False Claims Act, *reprinted in* CITIZEN SUITS AND QUI TAM ACTIONS. PRIVATE ENFORCEMENT OF PUBLIC POLICY app. 188–95 (National Legal Center for the Public Interest, 1996) (challenging historical pedigree of qui tam provisions).

zable interest that is concrete and particularized, actual or imminent. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Even if there were some undefined injury, and none is suggested, there is no "causal connection" between the injury and the conduct complained of. *See id.* Congress cannot statutorily assign the Executive's potential future interest in pursuing a particular fraud claim to an unnamed, theoretical plaintiff who has suffered no injury. To do so allows Congress to circumvent Article III's standing requirements, which are essential to the principle of a limited judicial role under our separation of powers.

The Court holds that the plaintiff has no standing to bring this action and, therefore, GRANTS the defendants' motion to dismiss.[5] All other motions not granted are hereby DENIED.

**5.** The Court's holding that the *qui tam* plaintiff lacks Article III standing is dispositive of this case. However, the Court would also note that the *qui tam* provisions of the False Claims Act also raise serious constitutional concerns as to whether Congress may delegate the executive powers of law enforcement to private parties who have not been appointed pursuant to the Appointments Clause of Article II of the Constitution. Such a delegation would raise serious concerns under the separation of powers principles as well. *See* James T. Blanch, *The Constitutionality of the False Claims Act's* Qui Tam *Provision*, 16 Harv. J.L. & Pub. Pol'y 701, 736–67 (1993) (discussing Appointments Clause and separation of powers concerns); Ara Lovitt, Note, *Fight for Your Right to Litigate: Qui Tam, Article II, and the President*, 49 Stan. L. Rev. 853 (1997) (arguing that qui tam provisions of FCA violate separation of powers).