UNITED STATES of America ex rel. El AMIN, et al., Plaintiffs/Relators,

v.

GEORGE WASHINGTON UNIVERSITY, Defendant.

Civil Action No. 95–2000(TAF).

United States District Court, District of Columbia.

Nov. 10, 1998.

As Amended November 20, 1998.

Alan M. Grayson, Victor Kubli, Ira Hoffman, Grayson and Associates, McLean, VA, Dara A. Corrigan, Assist. U.S. Atty., Washington, DC, Michael F. Hertz, Stephen D. Altman, Joel D. Hesch, Civil Div., U.S. Dept. of Justice, Washington, DC, for Plaintiffs/Relators.

David Overlock Stewart, Marc E. Sorini, Todd M. Richman, Ropes & Gray, Washington, DC, William F. Howard, Betsy K. Wanger, Office of Vice President & General Counsel, George Washington University, Washington, DC, for Defendant.

*Memorandum Opinion*

FLANNERY, District Judge.

There are four motions pending before the Court. This opinion shall address three of those motions. The fourth motion, A Motion to Reconsider the Court's Bench Ruling of March 26, 1998 Regarding Rule 9(b), shall remain under advisement pending further consideration by the Court. The three motions the Court will now address are (1) A Motion to Dismiss the Third Claim of the Third Amended Complaint; (2) A Motion to Dismiss for Lack of Subject Matter Jurisdiction; and (3) a Motion to Dismiss Claims Pre–Dating Oct. 24, 1989 as Prohibited by the Statute of Limitations.

For the reasons set forth below, the Court grants the defendant's motion to dismiss with prejudice the third claim of the third amended complaint; denies the defendant's motion to dismiss the entire case for lack of subject matter jurisdiction; and grants the defendant's motion to dismiss all claims pre-dating October 24, 1989 as prohibited by the statute of limitations.

## I. Background

This civil action was brought under the qui tam provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, by four nurse anesthetists formerly employed at the George Washington University Hospital. The qui tam plaintiffs (or "relators") seek to recover damages and civil penalties as a result of the defendant's allegedly fraudulent claims under the Federal Medicare Program. The relators' complaint alleges that, from 1989 to 1995, the defendant and its anesthesiologists routinely defrauded the government by submitting false claims for Medicare reimbursement. The relators filed their action on October 24, 1995. The Court unsealed the relators' complaint on April 15, 1997, after the United States declined to intervene in the lawsuit. Discovery is currently proceeding in this case and defendant has filed a number of motions, seeking to eliminate or reduce defendant's burden in responding to relators' discovery requests.

## II. Discussion

*(1) A Motion to Dismiss the Third Claim of the Third Amended Complaint*

On May 28, 1998, the Court ordered relators, *inter alia,* to amend their complaint by specifically identifying the anesthesiologist associations, other than Medical Faculty Associates, with which the defendant allegedly conspired. On June 5, 1998 the relators filed their third amended complaint. The relators' third amended complaint adds further detail, but defendant contends that the complaint still fails to allege a viable claim under the conspiracy provisions of the FCA, 31

U.S.C. § 3729(a)(3), and that the third claim of the amended complaint should be dismissed in its entirety. After reading the parties memorandum and hearing oral argument, the Court grants the defendant's motion to dismiss with prejudice the third claim of the third amended complaint for failure to state a claim.

The third claim alleges that the defendant, George Washington University ("GWU"), conspired with three national anesthesiologist associations—Medical Faculty Associates, the American Society of Anesthesiology, and the Association of University Anesthetists, ("Associations")—to defraud the government. According to relators, paragraphs 4, 54, 55, and 67 of the third amended complaint contain the relevant allegations in support of relators' third claim. The text of these paragraphs is as follows:

4. Defendant George Washington University (hereinafter "GWU") operates a hospital in the District of Columbia. At all times in question, GWU's hospital has administered anesthesia to Medicare patients. For those procedures, GWU bills for the services of anesthesiologists whom it directs and controls, some of which are associated with its Medical Faculty Associates, with the American Society of Anesthesiology, and with the Association of University Anesthetists. The anesthesiologists are employed by GWU. All of the anesthesia billing is done by GWU.

54. As GWU enriched itself by misrepresenting that its anesthesiologists had performed the work required for Medicare reimbursement, GWU's anesthesiologists utilized their Associations to promote that same lie to the public, and in particular to the segment of the population eligible for Medicare. Specifically, the Associations conducted studies, issued mailings, and published commentaries arguing that only their member anesthesiologists were competent to perform anesthesia work; that nurse-anaesthetists in particular should be prohibited from performing it alone; and accordingly, only anesthesiologists should be permitted to obtain reimbursement, at their higher rates, for the work. The anesthesiologists vigorously promoted that message through their Associations, and vigorously opposed any change in governing law that would openly permit nurse-anaesthetists to perform the work. At the same time, the anesthesiologists cynically forced nurse-anesthetists like the Relators to perform all the anesthesiologists' work.

55. Many of GWU's anesthesiologists participated in these efforts as constituents of Medical Faculty Associates and the American Society of Anesthesiology. Certain GWU anesthesiologists, such as Dr. Weintraub, also participated in the Associations' efforts as constituents of the Associations of University Anesthetists.

67. Defendant, GWU, the aforementioned anesthesiologists, other GWU anesthesiologists not mentioned, and the aforementioned anesthesiologists' organizations, agreed between and among themselves, and have conspired, to defraud the Government by obtaining or seeking to obtain or getting allowance and payment of GWU's false or fraudulent claims allowed or paid in violation of 31 U.S.C. § 3729(a)(3), thereby damaging the United States.

Third Amended Complaint (June 5, 1998). GWU argues that (1) the relators' complaint never alleges that GWU and the professional associations ever had any manner of agreement to defraud the United States through the submission of fraudulent claims for anesthesiology services and (2) the relators' allegations regarding the purported conspiratorial activities between GWU and the professional associations involve nothing more than engaging in public relations campaigns to influence legislation, which cannot be a violation of 31 U.S.C. § 3729(a). Relators strenuously disagree, arguing that they have clearly set forth a viable claim because they have alleged that GWU conspired with the Associations to defraud the government.

After considering the parties' arguments, the Court agrees with the defendant that the third claim of the third amended complaint should be dismissed. The third claim consists of nothing more than conclusory allegations that GWU conspired with these Associations to defraud the government. Even if the relators were able to prove that the Associations and GWU agreed

to commit the activities alleged in the third claim, these activities would not constitute a conspiracy to defraud. Rather, the activities alleged consist of entirely lawful pursuits such as convincing legislatures and the public that it is beneficial to have doctor anesthesiologists, rather than nurse anesthetists, treat patients. The Court further agrees with defendant that the relators' invocation of *United States v. Bouchey*, 860 F.Supp. 890, 893 (D.D.C.1994), *aff'd*, 1997 WL 404714, 1997 U.S.App. LEXIS 19034 (D.C.Cir.1997) and *United States v. Metzinger*, Civil Action No. 94–7520, 1996 WL 5300021996 U.S. District LEXIS 13666 (E.D.Pa. Sept. 16, 1998), is "misplaced since the present complaint does not allege that [the] defendant conspired with one or more persons *to have a fraudulent claim paid by the United States.*" Def. Reply Memorandum at 2–3 (internal quotations omitted). The relators' factual allegations concerning the Associations' activities have no connection to the allegedly fraudulent billing scheme engaged in by GWU or the doctor anesthesiologists alleged absence from hospital procedures. Thus, the third complaint does not state, in any way, that the Associations submitted, *or caused* to be submitted, false bills to the government. Contrary to plaintiffs' contention, *Bouchey* actually supports defendant's position that the third claim should be dismissed because the complaint does not meet the three part test discussed in *Bouchey*.

■ The Court is mindful that an overt act need not be pleaded against each defendant in a conspiracy, because a single overt act by one of the conspirators can support a conspiracy claim, even on the merits. However, here the complaint fails to *identify any agreement* between the parties to defraud the government or *to engage in any act* that could constitute an attempt to defraud the government. Thus, the third claim of the third amended complaint should be dismissed.

*(2) A Motion to Dismiss for Lack of Subject Matter Jurisdiction*

This motion asks the Court to dismiss this action for lack of subject matter jurisdiction. The defendant argues that the relators do not have standing, under Article III of the United States Constitution, to bring this action because they have suffered no injury cognizable under Article III. GWU also argues that the FCA violates the principle of separation of powers and the Appointments Clause, Article II, Section 2, Clause 2 of the Constitution.

These arguments have been rejected by almost every federal district court and every federal circuit court to address them, but they have not been directly addressed by any judge in this Circuit. *See e.g., United States ex. rel. Hall v. Tribal Development Corp.*, 49 F.3d 1208 (7th Cir.1995); *United States ex. rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032 (6th Cir.1994); *United States ex. rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir.1993); *United States ex. rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2nd Cir.1993); *United States ex. rel. Givler v. Smith*, 775 F.Supp. 172 (E.D.Pa.1991); *United States ex. rel. Truong v. Northrop Corp.*, 728 F.Supp. 615, 619 (C.D.Cal.1989); *cf. Juliano v. Federal Asset Disposition Ass'n*, 736 F.Supp. 348 (D.D.C.1990) (OG) (holding that the FCA permits the government to dismiss a qui tam plaintiff's complaint despite the qui tam plaintiff's objection because otherwise the statute would raise serious constitutional questions).

1. Standing

■ Article III, Section 2 of the United States Constitution "limits the 'judicial power' to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). One incident of this bedrock principle is the requirement that "a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Id.* Standing is comprised of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "First, the plaintiff must have suffered an injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, conjectural or hypothetical."

*Id.* (internal citations and quotations omitted). Second, there must be a "casual connection" between the injury and the conduct forming the basis for the lawsuit. *Id.* Third, it must be likely that "the injury will be redressed by a favorable decision." *Id.* The first of these three elements is at issue in defendant GWU's motion. Congress cannot waive the injury-in-fact requirement, *Valley Forge,* 454 U.S. at 487–88 n. 24, 102 S.Ct. 752, but it may, via statute, "grant an express right of action to persons who otherwise would be barred by prudential standing rules." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). *See also Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 103 n. 9, 99 S.Ct. 1601, 60 L.Ed.2d 66.

As previously indicated, several federal courts have considered whether a qui tam plaintiff may, without violating standing rules, bring suit under the FCA when the government declines to intervene. Courts have overwhelmingly declared that qui tam suits do not violate the standing requirements. In rejecting these challenges, courts have relied upon several theories. First, courts have found that the real plaintiff in a qui tam suit is the government and that the government's injury satisfies the injury-in-fact required for Article III standing. *See Hall,* 49 F.3d at 1212; *Kreindler & Kreindler,* 985 F.2d at 1154 (citing *United States ex. rel. Milam v. University of Texas MD Anderson Cancer Ctr.,* 961 F.2d 46, 49 (4th Cir.1992)); *Givler,* 775 F.Supp. at 180; *Truong,* 728 F.Supp. at 619. Second, courts have concluded that the FCA effectively assigns the government's claims to qui tam plaintiffs, who then may sue based upon an injury to the federal treasury. *See Kelly,* 9 F.3d at 747 (citing *Kreindler & Kreindler,* 985 F.2d at 1154–55; *Givler,* 775 F.Supp. at 180–81; *Truong,* 728 F.Supp. at 618–20). Third, courts have found support for Article III standing from the personal stake that a relator has in the outcome of a case. *See id.* at 749; *Givler,* 775 F.Supp. at 180; *Truong,* 728 F.Supp. at 618–20. The relators' personal stake derives from three factors: (1) the qui tam plaintiffs must fund the prosecution of the FCA suit; (2) the qui tam plaintiff receives a sizable bounty if he prevails in the

action; and (3) the qui tam plaintiff may be liable for costs if the suit is frivolous. *See Kelly,* 9 F.3d at 749 (citing *Kreindler & Kreindler,* 985 F.2d at 1154). Courts have viewed this personal stake as ensuring that cases have concrete factual disputes. *See id.* at 749; *Givler,* 775 F.Supp. at 180. Fourth, many courts have relied upon the lengthy history of the FCA and dicta in several Supreme Court cases as supporting the validity of the qui tam provisions of the FCA. *See Hall.* 49 F.3d at 1212–13 (citing *Marvin v. Trout,* 199 U.S. 212, 26 S.Ct. 31, 50 L.Ed. 157 (1905); *United States ex. rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943); *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 572–73, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *Kreindler & Kreindler,* 985 F.2d at 1155 (citing *Lujan; Priebe & Sons v. United States,* 332 U.S. 407, 418, 68 S.Ct. 123, 92 L.Ed. 32 (1947) (Frankfurter, J., dissenting); *Hess,* 317 U.S. at 541–42, 63 S.Ct. 379 (1943)); *United States ex rel. Milam v. University of Tex. M.D. Anderson Cancer Ctr.,* 961 F.2d 46, 49 (4th Cir.1992); *United States ex. rel. Walle v. Martin Marietta Corp.,* Civ. A. No. 92–3677, 1994 WL 518307, at *2 (E.D.La.) (citing *Hess* ). *But see Truong* at 618 (finding the historical argument unpersuasive).

The lone exception to the steady stream of decisions rejecting defendant's contentions is the somewhat recent decision by Judge Hoyt in *United States ex. rel. Riley v. St. Luke's Episcopal Hospital,* 982 F.Supp. 1261 (S.D.Tex.1997). In *Riley,* the relator claimed that some of the defendants had filed false claims for reimbursement during the relator's employment as a nurse at defendant St. Luke's Episcopal Hospital. *See* 982 F.Supp. at 1262. The defendants filed a motion to dismiss, arguing that the qui tam plaintiff lacked Article III standing. *See id.* at 1262, 1268 n. 5. After analyzing some of the theories discussed by federal courts in rejecting standing based challenges to the FCA, the court held that the relators in *Riley* had not suffered an injury-in-fact, as required by Article III of the Constitution. *See id.* at 1268. It also found that Congress cannot statutori-

ly assign the United States' interest in pursuing a claim to an "unnamed theoretical plaintiff who has suffered no injury" because that would allow Congress to circumvent the standing requirements of Article III. *See id.* at 1269. Accordingly, the court dismissed the action, finding that the relators lacked Article III standing. *See id.* While the court recognized that its resolution of the standing issue disposed of the case, it also noted that the FCA raises "serious constitutional questions" with regard to separation of powers and the Appointments Clause. *Id.* at 1269 n. 5.

In this action, defendant GWU argues that in light of *Riley* and the Supreme Court's recent cases on standing, this Court should find that the relators lack standing and dismiss the case for lack of subject matter jurisdiction. Defendant's argument is multifaceted. First, defendant contends that the relators themselves have suffered no injury from the events alleged in the complaint. According to defendant, this Court thus lacks subject matter jurisdiction over the action because relators lack Article III standing. Second, defendant argues that, under the more recent case law, two of the theories relied upon by earlier courts to find Article III standing, the "conferral theory," *see* Defendant GWU's Motion to Dismiss for Lack of Subject Matter Jurisdiction at 6 (citing *United States ex. rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148 (2nd Cir.1993)), and the "assignment theory," *see id.* (citing *United States ex. rel. Kelly v. Boeing Co.,* 9 F.3d 743 (9th Cir.1993)), violate (1) the Case or Controversy requirement of Article III; (2) the Take Care Clause of Article II; and (3) the doctrine of separation of powers.

After carefully considering defendant's argument, this Court disagrees with defendant's contention that this court lacks subject matter jurisdiction. The only case that is directly on point and in favor of defendant, *Riley,* has been rejected recently by two courts in the same federal district, the Southern District of Texas. *See United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.,* 20 F.Supp.2d 1017, 1043–45, 1998 WL 657714 (S.D.Tex.1998); *Hopkins*

*v. Actions, Inc. of Brazoria County,* 985 F.Supp. 706, 710 (S.D.Tex.1997). In *Hopkins,* the court disagreed with Judge Hoyt's finding that a qui tam plaintiff must suffer an Article III injury-in-fact in order to have Article III standing and that injury to the government is insufficient. *Hopkins,* 985 F.Supp. at 710. The court rejected Riley's reasoning "[i]n light of the congressional purpose underlying the FCA and its plain language." *Id.* The court also found *Riley* in conflict with language contained in the controlling case of *United States ex. rel. Weinberger v Equifax, Inc.,* 557 F.2d 456 (5th Cir.1977). *See Hopkins,* 985 F.Supp. at 710 ("[t]he Fifth Circuit [has] described the FCA as a statute that 'grants informers standing to sue and an award for successful action under the statute.'") (quoting *Weinberger* ). In *Thompson,* the court found *Riley* unpersuasive in light of the many Circuit court decisions upholding the qui tam provisions of the FCA. 20 F.Supp.2d 1017, 1046–46, 1998 WL 657714. The court found that the government's injury-in-fact suffices for standing purposes and that the relator merely steps in as the government's representative or assignee. *See id.* (citing *United States ex rel. Berge v. Board of Trustees,* 104 F.3d 1453, 1457–58 (4th Cir.1997); *Hall,* 49 F.3d at 1212–14; *Kelly,* 9 F.3d at 748; *Kreindler,* 985 F.2d at 1154; *Milam,* 961 F.2d at 49).

Moreover, a federal district court in Ohio also recently rejected Judge Hoyt's reasoning in *Riley. See United States ex. rel. Roby v. Boeing Co.,* 995 F.Supp. 790 (S.D.Ohio 1998). That court reviewed the numerous federal court decisions that have rejected standing related challenges to qui tam actions. *See id.* at 792–94. It then found that even if the qui tam relator in *Roby* had suffered no injury-in-fact, the relator would nevertheless have standing under Article III because of the alleged injury to the government. *See id.* at 795. In *Roby,* the court specifically rejected the defendant's contention that the court should follow the reasoning of *Riley.* Instead, it found *Riley* unpersuasive and contrary to Fifth Circuit precedent. *See id.* at 794 n. 5 (citing *Weinberger,* 557 F.2d at 460).

This Court agrees with the reasoning of *Hopkins, Roby,* and *Thompson* and declines to follow *Riley.* In light of the overwhelming support for finding Article III standing in qui tam actions before *Riley,* the three subsequent decisions disagreeing with *Riley,* and the Court's own doubt about the court's reasoning in *Riley,* the Court declines defendant GWU's invitation to venture out on the thin branches of law supporting its contention that the case should be dismissed for lack of standing. Instead, the Court finds support for denying defendant's motion in all four of the theories discussed by federal courts in upholding the qui tam provisions.

Despite defendant's well constructed argument, the Court does not read the Supreme Court cases cited by defendant as mandating the overthrow of the many federal court decisions on this issue. As an initial matter, the basis for defendant's argument is that these Supreme Court cases signal a change in the governing law that invalidates the previous decisions on this topic that are cited by the relators. Nevertheless, many of the cases cited by defendant were actually issued *before* some of the more important Circuit court decisions to address this issue. *Compare Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise,* 501 U.S. 252, 111 S.Ct. 2298, 115 L.Ed.2d 236 (1991); *Morrison v. Olson,* 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988) *with United States ex. rel. Hall v. Tribal Development Corp.,* 49 F.3d 1208 (7th Cir.1995); *United States ex. rel. Taxpayers Against Fraud v. General Electric Co.,* 41 F.3d 1032 (6th Cir. 1994); *United States ex. rel. Kelly v. Boeing Co.,* 9 F.3d 743 (9th Cir.1993); *United States ex. rel. Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148 (2nd Cir. 1993). As for the remaining Supreme Court cases cited by defendant, *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *Printz v.*

*U.S.,* 521 U.S. 98, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997); and *Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), this Court does not agree with defendant's application of those cases to the issue of standing in a qui tam action. These cases do not disturb the conclusion reached by courts in finding sufficient Article III standing on the basis of the injury-in-fact suffered by the United States. *See supra,* at 165.[1] These cases also do not upset the rationale of courts that have relied upon the long history of the FCA and Supreme Court dicta as supporting qui tam plaintiff's standing. *See supra,* at 166. At most these Supreme Court cases only call into question the assignment theory, *see supra* at 165, and the theory that a qui tam plaintiff's interest in the FCA litigation provides standing, *see supra* at 165. The remaining two rationales offered by federal courts still suffice to find Article III standing.

This Court is most persuaded by the rationale offered in support of standing in *United States ex. rel. Hall v. Tribal Development Corp.,* 49 F.3d 1208 (7th Cir.1995). Once one realizes that the true plaintiff in a qui tam action is the government and not the relator, then the standing problem dissolves and the remaining issues pertain solely to the principle of separation of powers and the Appointments Clause. *See infra.* This court finds this rationale particularly appealing in light of Judge Gasch's decision in *Juliano, see supra* at 165, that the government may dismiss an FCA case over a relator's objection.

Thus, this case need not be dismissed for lack of Article III standing.

2. Separations of Powers

■ Defendant contends that the provisions of the FCA that purport to confer standing on qui tam relators are unconstitutional because they violate the doctrine of separation of powers. It also argues that to the extent that the statute assigns or confers

---

1. The Court specifically disagrees with defendant's assumption that if the United States has suffered the injury-in-fact required under Article III, standing is either being assigned or conferred on the relator. Instead, the Court thinks that defendant's argument misses the point. In a qui tam action, the United States suffers the injury and remains the true plaintiff, the party whose standing is at issue throughout the action, regardless of whether the government intervenes. The relator merely acts as the United States' agent in pursuing the claim.

the Executive Branch's right to pursue FCA violations to individuals outside the Executive Branch, it violates the separation of powers principles and the "Take Care" Clause of the U.S. Constitution. U.S. CONST. art. II, § 3. GWU also argues that the qui tam provisions cannot be saved by the holding in *Morrison v. Olson*, 487 U.S. 654, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988).

Several courts have considered and rejected challenges to the FCA based on the doctrine of separation of powers. *See Kelly*, 9 F.3d at 749–57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Truong*, 728 F.Supp. at 620–22. In *Kelly*, the Ninth Circuit undertook an exhaustive analysis, comparing the FCA's provisions with the independent counsel provisions considered in *Morrison v. Olson. See Kelly*, 9 F.3d at 749–55. *See also Givler*, 775 F.Supp. at 176–78 (engaging in a similar analysis). The court found that the qui tam provisions of the FCA do not impermissibly undermine the role of the Executive Branch because the statute allows the Executive Branch to exercise substantial control over the litigation. *Kelly*, 9 F.3d at 749–55. *See also Kreindler & Kreindler*, 985 F.2d at 1155; *Givler*, 775 F.Supp. at 176–78. The court also rejected the argument that the involvement of the Judicial Branch authorized by the FCA contravenes the separation of powers principle.[2] *Kelly*, 9 F.3d at 755–57. *See also Kreindler & Kreindler*, 985 F.2d at 1155.

After considering defendant's argument, with special consideration to *Riley* and the Supreme Court cases cited by defendant, the Court rejects defendant's contention that the FCA impermissibly transfers core Executive Branch powers to the qui tam plaintiff. Instead, the Court agrees with the analysis of federal courts cited above. These courts have not viewed the powers given to the qui tam plaintiff or, more importantly the powers removed from the Executive, as too great to conflict with the bedrock principle of separa-

tion of powers. This Court finds *Kelly's* comparison of the FCA's qui tam provisions to the independent counsel provisions considered in *Morrison* very convincing. This Court agrees with the Ninth Circuit's finding in *Kelly* that the independent counsel provisions provide for significantly less Executive Branch oversight than the qui tam provisions of the FCA and that therefore the qui tam provisions of the FCA do not violate the doctrine of separation of powers. The Court also agrees with the Ninth Circuit's decision in *Kelly* to compare the qui tam and independent counsel provisions *in toto* rather than *seriatim*. 9 F.3d at 752. The Court therefore, joins the other federal courts that have considered this issue and rejects defendant's contention that the FCA violates separation of powers.[3] The government retains significant control over qui tam litigation, even when it declines to intervene. In light of the case law and the Court's own view of the issue, the defendant's contention must be rejected.

### 3. The Appointments Clause

■ Furthermore, defendant claims that the qui tam provisions of the FCA violate the Appointments Clause, Article II, Section 2, Clause 2 of the Constitution. Yet, GWU presents very few arguments in support of its position. Several courts have considered constitutional challenges to the FCA based on the Appointments Clause. *See Kelly*, 9 F.3d at 757–59; *Taxpayers Against Fraud*, 41 F.3d at 1041–42; *Givler*, 775 F.Supp. at 179; *Truong*, 728 F.Supp. at 622–24. These courts have found that qui tam plaintiffs are not "officers" subject to the Appointments Clause and that the authority wielded by relators is not so significant that only "officers" may exercise it. *See Kelly*, 9 F.3d at 757–59; *Taxpayers Against Fraud*, 41 F.3d at 1041–42; *Givler*, 775 F.Supp. at 179; *Truong*, 728 F.Supp. at 622–24. Accordingly,

---

2. The FCA provides that courts must approve certain government requests regarding qui tam litigation, such as dismissal. *See* 31 U.S.C. § 3729(b)(1). *See also Juliano, supra* at 165.

3. The Court recognizes that the *Riley* court, in dicta, questioned whether the qui tam provisions

conflict with the separation of powers. *See Riley*, 982 F.Supp. at 1269 n. 5. However, in light of the three subsequent decisions questioning *Riley, see supra* at 167, and the Court's favorable view of *Kelly, Taxpayers Against Fraud, Kreindler & Kreindler, Givler* and *Truong*, the Court declines to follow *Riley's* path.

these courts have refused to find the qui tam provisions unconstitutional. *See Kelly,* 9 F.3d at 757–59; *Taxpayers Against Fraud,* 41 F.3d at 1041–42; *Givler,* 775 F.Supp. at 179; *Truong,* 728 F.Supp. at 622–24.

After reading defendant's memoranda with special consideration to the rigors of the Appointments Clause, this Court declines to invalidate the FCA. The Court finds merit in the reasoning of courts upholding the FCA, *see supra,* and finds that defendant has given the Court little reason to question these courts' holdings. It is clear that the relators enjoy limited powers and benefits and are not "officers" within the meaning of the Appointments Clause. Moreover, the Court is convinced that the FCA does not vest in relators the "primary responsibility" for enforcing the FCA by allowing the relators to litigate on behalf of the government in court. *See Buckley v. Valeo,* 424 U.S. 1, 140, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (holding that only officers may undertake the "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights"). Rather, the government remains the true plaintiff and retains significant control and "primary responsibility" over the litigation. *See generally, Juliano v. Federal Asset Disposition Ass'n,* 736 F.Supp. 348 (D.D.C.1990) (OG) (holding that the FCA permits the government to dismiss a qui tam plaintiff's complaint despite the qui tam plaintiff's objection). *(3) a Motion to Dismiss Claims Pre–Dating Oct. 24, 1989 as Prohibited by the Statute of Limitations*

Defendant moves the Court to dismiss the portion of relator's claims that pre-date October 24, 1989 as prohibited by the statute of limitations contained in the FCA, 31 U.S.C. § 3731(b). Defendant claims that the applicable statute of limitations is six years and that therefore all claims pre-dating October 24, 1989 [4] are time barred. Defendant argues that federal courts dealing with the question of the appropriate statute of limitations under the FCA have uniformly applied the six year limit. Defendant asserts that federal courts presented with this issue have adopted two different interpretations of the

FCA's statute of limitations. However, defendant GWU argues that, under *either* of these interpretations, the six year, rather than the ten year period, applies to the relators in this case. Defendant argues that under the first theory, the Ninth Circuit has found that 31 U.S.C. § 3731(b)(2) applies to a suit brought solely by a qui tam relator, but nevertheless has applied the six year statute of limitations because of the application of the three-year knowledge requirement, contained in 31 U.S.C. § 3731(b)(2), to the qui tam relators before the court. *See* Defendant George Washington University's Motion to Dismiss Claims Pre–Dating October 24, 1989 as Prohibited by the Statute of Limitations, Oct. 13, 1998, at 2–3 (citing *United States ex. rel. Saaf v. Lehman Brothers,* 123 F.3d 1307 (9th Cir.1997); *United States ex. rel. Hyatt v. Northrop Corp.,* 91 F.3d 1211 (9th Cir.1996), *vacated on other grounds,* —— U.S. ——, 117 S.Ct. 2476, 138 L.Ed.2d 986 (1997)("*Hyatt II*")). Defendant GWU further contends that under the second theory, which it terms the "*Thistlethwaite* and *Hyatt I* Approach," *See United States ex. rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.,* 6 F.Supp.2d 263 (S.D.N.Y.1998); *Hyatt v. Northrop Corp.,* 883 F.Supp. 484 (C.D.Cal. 1995), *aff'd on other grounds,* 91 F.3d 1211 (1996)("*Hyatt I*"), courts have held that 31 U.S.C. § 3731(b)(1) rather than 31 U.S.C. § 3731(b)(2), which was added by the 1986 amendments to the FCA, applies to a suit brought solely by qui tam relators. Defendant also advances a third line of argument, which it claims better reflects the plain meaning of the statute. Defendant urges the Court to find that the relators in this case should be barred from asserting claims pre-dating October 24, 1989 because the relators did not timely inform the United States of the alleged Medicare fraud. Thus, defendant asks the Court to impute the knowledge of the relators to the government in applying the FCA's statute of limitations.

Relators disagree, contending that the plain meaning of the statute and the relevant case law support the relators' argument that the applicable statute of limitations is ten

---

**4.** Defendant apparently arrives at the October 24, 1989 date by subtracting six years from the

date that the relators filed their complaint in this case, October 24, 1995.

years and the appropriate cut-off date is October 24, 1985. According to relaters, the applicable section of the FCA is Section 3731(b)(2) and therefore the statute of limitations is 10 years. In their May 22, 1998 memorandum to the Court on this issue, the relators conceded that, even if the ten year period applied, discovery could only cover periods extending as far back as October 27, 1986, the effective date of the amendments to the False Claims Act's statute of limitations. Relators' Response to Defendant's Proposed Discovery Plan and Brief Addressing Patient Confidentiality and the Statute of Limitations, May 22, 1998, at 16 ("In light of [*Hughes Aircraft Co. v. United States ex. rel. Schumer*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ], the Relators in this case recognize that their pursuit of GWU violations is limited to the amendments' effective date, i.e., October 27, 1986"). However, now relators apparently wish to revoke that concession and argue that they can pursue any GWU violations occurring as far back as October 24, 1985, i.e. the full ten year period. Although relators' argument is somewhat confusing, they appear to argue that application of the ten year statute of limitations in this case would not be retroactive and complies with the Supreme Court's decision in *Hughes*.

■ After carefully considering this issue, which was fully briefed during the summer and again this fall, and hearing oral argument from the parties, the Court concludes that the six year statute of limitations should apply in this case. Accordingly, the Court holds that all claims predating October 24, 1989 are barred by the FCA's statute of limitations.

The FCA's statute of limitations provides: A civil action under section 3730 may not be brought-

(1) more than 6 years after the date on which the violation of Section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been

known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed, whichever occurs last. 31 U.S.C. § 3731(b). The Court agrees with defendant that federal courts have adopted two, somewhat different, approaches to this issue. The first approach is illustrated by the Ninth Circuit's opinions in *Hyatt II* and *Saaf*, while the second approach is illustrated by the decisions in *Thistlethwaite* and *Hyatt I.*

In *Hyatt II*, the Ninth Circuit found that 31 U.S.C. § 3731(b)(2) applied to a suit brought solely by a qui tam relator. *See id.* at 1214–16. Nevertheless, the court held that the applicable statute of limitations was six years, not ten years, because the relator in that case did not file suit within three years of when he knew or should have known of the alleged violations and thus violated subsection (b)(2)'s three year knowledge prong. *See id.* at 1217–18. The court rejected the argument advanced by the plaintiff in that case, also adopted by the plaintiffs in this case, that in applying subsection (b)(2) to a suit by a qui tam relator, the knowledge prong of subsection (b)(2) only refers to the knowledge of the government. *See id.* at 1218 ("If he [plaintiff] accepts the benefits of the tolling statute, he must be subject to its restrictions").

In *Saaf*, the court reemphasized its decision that the tolling provision of 31 U.S.C. § 3731(b)(2) applies to qui tam relators as well as the government. *See Saaf*, 123 F.3d at 1307–08. The district court in *Saaf* dismissed the relators complaint, holding that 31 U.S.C. § 3731(b)(2) does not apply to a qui tam relator. *Id.* The *Ninth Circuit*, in a rather short opinion, reversed the district court, which issued its decision before the Ninth Circuit's decision in *Hyatt II. Id.* at 1308. The Ninth Circuit found the district court's holding flatly contrary to *Hyatt II. See id.* Accordingly, the Ninth Circuit reversed the dismissal of the complaint and remanded to the district court for proceedings consistent with its opinion.[5] *Id.*

---

**5.** Relators rely on *Saaf*, contending that in *Saaf*, the Ninth Circuit rejected its position in *Hyatt II*

that the three year extension begins to run from "the date the plaintiff knew or should have rea-

After reviewing these two Ninth Circuit decisions, the Court concludes that even if it agreed with plaintiffs' argument that 31 U.S.C. § 3731(b)(2) applies to an action taken solely by a qui tam relator, the Court would still reject plaintiffs' contention that a 10–year limit applies in this case. Under the Ninth Circuit's own logic, the relators in this case would be subject to the six year, not the ten year, statute of limitations.[6] The 10–year limitation was meant to act as the maximum possible statute of limitations under the FCA and plaintiffs' argument would convert that maximum into the default rule. Contrary to the relators' assertions, the Court concludes that it is the relators' argument, not the defendant's argument, which confuses theories and tries to embark on an illogical path between the two dominant approaches adopted by federal courts.[7]

However, the Court is not convinced that the position adopted by the Ninth Circuit is meritorious. The plain language of the statute implies that 31 U.S.C. § 3731(b)(2) only applies to an action in which the government decides to intervene. The position taken by the Ninth Circuit requires some unusual interpretations when applied to a qui tam rela-tor, such as interpreting the words "official of the United States charged with responsibility to act in the circumstances," 31 U.S.C. § 3731(b)(2), to refer to a non government official, the qui tam relator. *See Hyatt v. Northrop Corp.*, 883 F.Supp. 484, 486–88 (C.D.Cal.1995), *aff'd on other grounds*, 91 F.3d 1211 (9th Cir.1996). Instead, the Court is persuaded by the decision in *United States ex. rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.Supp.2d. 263 (S.D.N.Y. 1998).[8] In *Thistlethwaite*, the court considered the Ninth Circuit's interpretation of Section 3731 and rejected it. *See id.* at 2 n. 1. Instead, the court held that 31 U.S.C. § 3731(b)(2) only applies to the government, not a qui tam relator. *See id.* at 2. The court stated that the District Court's holding in *Hyatt* more closely adhered to the language of the statute. *See id.* at 2 n. 1.

The plain meaning of the statute supports the conclusion that the three year knowledge requirement contained in 31 U.S.C. § 3731(b)(2) only applies to cases in which the government intervenes. The subsection creating the three year tolling provision and the ten year limit makes no mention

---

sonably should have known of the facts material to the action." *See* Relators Opposition to Defendant's Motion to Dismiss Claims Pre–Dating October 24, 1989 ("Rel.Opp."), Oct. 26, 1998, at 7 n. 3 (quoting *Hyatt II* ). Instead, according to relators, *Saaf* found that a qui tam plaintiff may gain the benefit of the ten year period and ignore the limitations placed upon that benefit. *Id.* The Court sees no support for that theory in the Ninth Circuit's rather summary reaffirmation of *Hyatt II* in *Saaf*. In fact, the quote from *Saaf* that relators include in their memorandum to the Court specifically edits out the relevant portion of the *Saaf* decision, in which the Ninth Circuit reviews its holding in *Hyatt II*. Rel. Opp. at 7 n. 3. The relevant section reads "and (2) as to qui tam plaintiffs, the statute of limitations begins to run when the plaintiff knew or should have discovered the facts underlying the alleged fraud." *Saaf*, 123 F.3d at 1308 (citing *Hyatt II* ). Nowhere in *Saaf* does the Ninth Circuit question this holding. Relators are sorely mistaken if they think that the appropriate way to convince this Court of their argument is to misrepresent the relevant case law.

6. According to the relators' complaint in this action, they knew about the defendant's false claims from their personal experiences while working at the GWU hospital. Thus, the three year knowledge provision would have started approximately when the relators saw these allegedly fraudulent anesthesiology procedures. Since the relators ceased working at GWU more than three years before the complaint was filed and relators allege no other basis for learning of the violations, the tolling provision cannot apply to these relators and thereby permit relators claims to exceed the six year period.

7. Relators barely rely upon the one case that actually supports their argument, *U.S. ex. rel. Colunga v. Hercules, Inc.*, Civ. No. 89–954–B, 1998 WL 310481 (D.Utah Mar.6, 1998). In *Hercules*, the court relied upon legislative history, the plain meaning of the statute, and policy considerations in concluding that the three year limitation begins to run when the Department of Justice received information as to the violation. *See id.* at *3–5. This Court recognizes the difficulty faced by the *Hercules* court in reconciling the Ninth Circuit's approach with the plain language of the statute, *see id.*, but declines to resolve this problem by extending the statute's tolling provisions to qui tam plaintiffs.

8. The Court declines defendant's invitation to create a third interpretation of the FCA's statute of limitations. *See* Def. Mem. at 6–7. Instead, the Court endorses the approach adopted by the District Court in *Thistlethwaite*.

of the qui tam relator and refers to an "official of the United States." *See* 31 U.S.C. § 3731(b)(2). This indicates that subsection (b)(2) was not intended to apply to a qui tam relator. Moreover, the 1986 Amendment's legislative history indicates that Congress was concerned about the government not being able to bring an FCA cause of action because of difficulties in detecting fraud. *See* H.R. REP. No. 99–660, at 25 (1986); S.Rep. No. 99–345, at 15 (1986), *reprinted* in 1986 U.S.C.C.A.N. 5266, 5280. Under the relators theory, the government's knowledge of fraud and its ability to bring suit would be unaided by the 1986 Amendment. Instead, the position advanced by relators in this case would allow future qui tam relators to allow false claims to build up, to the detriment of the government, and thereby obtain a larger recovery by sitting on their hands until the end of the ten year period. The Court thinks this approach unwise and unsupported by the case law or the statutory provisions.

In conclusion, it is the Court's considered judgment that the applicable statute of limitations is 6 years.[9] To the extent that the parties dispute whether particular claims or discovery requests are prohibited by the statute of limitations,[10] the Court reserves judgment, finding that the parties have not adequately addressed or presented to the Court the issue of whether the statute of limitations runs from when the claim is presented to the government (and how one defines this term) or when the government pays the false claim. *See Jana,* 41 Fed.Cl. 735, 742–43 1998 WL 566858 (discussing the different approaches courts have adopted in determining when the "violation" referred to in 31 U.S.C. § 3731(b) occurs).

III.   Conclusion

For the reasons given above, the Court GRANTS the defendant's motion to dismiss with prejudice the third claim of the third amended complaint; DENIES the defendant's motion to dismiss the entire case for lack of subject matter jurisdiction; and GRANTS defendant's motion to dismiss all claims pre-dating October 24, 1989. An appropriate order accompanies this opinion.

### ORDER

For the Reasons set forth in the accompanying memorandum, it is hereby

ORDERED that the defendant's motion to dismiss with prejudice the third claim of the third amended compliant is GRANTED; and it is further

ORDERED that the defendant's motion to dismiss the entire case for lack of subject matter jurisdiction is DENIED; and it is further

ORDERED that the defendant's motion to dismiss all claims pre–dating October 24, 1989 is GRANTED.

SO ORDERED.

---

**9.** The Court's determination that the statute of limitations is six and not ten years, renders it unnecessary to reach the relators' arguments that the ten year period permits recovery for claims before the 1986 amendments. The Court notes that relators' argument is not without some foundation. *See Jana, Inc. v. United States,* 41 Fed.Cl. 735, 1998 WL 566858 (Fed.Cl.1998); *Thistlethwaite,* 6 F.Supp.2d at 264–65.

**10.** In the relators' memorandum on the statute of limitations issue, they imply that defendant's motion should be denied because it is unsupported by evidence and assumes when the violations in question occurred.